**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| FLOWBEE INTERNATIONAL, INC. and FLOWBEE HAIRCUTTER LIMITED PARTNERSHIP, | §§§§ | |
| Plaintiffs, | §§ | |
| v. | §§ | Civil Action No. C-09-199 |
| GOOGLE INC., | §§§ | |
| Defendant. | § | |

<u>**DECLARATION OF CARL C. BUTZER**</u>

1.      My name is Carl C. Butzer.  I am over the age of 21, of sound mind, have never been convicted of a felony, am competent to make this Declaration, and every statement herein is within my personal knowledge and is true and correct.

2.      I am an attorney of record for Defendant Google Inc.  In that capacity, I have gained personal knowledge of the facts contained herein, each of which is true and correct.

3.      Attached to this declaration as Exhibits A and B, respectively, are true and correct copies of Flowbee International, Inc.'s "Notice of Motion and Motion for Preliminary Injunction and Memorandum of Points and Authorities in Support Thereof" and "Answer and Counterclaim for Injunctive Relief and Damages for Federal Trademark Infringement, False Designation of Origin, Cyber-piracy; Dilution; Common Law Trademark Infringement, California Statutory Unfair Competition, and Common Law Unfair Competition", which were  filed in *Robocut, Inc. v. Flowbee International, Inc.; Flowbee International, Inc. v. Robocut, Inc. & Alfred Natrasevchi*, Case 3:04-cv-00979-MMC, in the United States District Court in the Northern District of California, as retrieved from the Public Access to Court Electronic Records (PACER) system.

EXHIBIT
2
PENGAD-Bayonne,N.J.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _9/13/09_        _____
                             Carl C. Butzer

1  LAWRENCE G. TOWNSEND  (SBN 88184)
   LAW OFFICES OF LAWRENCE G. TOWNSEND
2  455 Market Street, 19th Floor
   San Francisco, California 94105
3  Telephone:  (415) 882-3288
   Facsimile:  (415) 882-3299
4
   Attorneys for Defendant, Counterclaimant and
5  Third-Party Plaintiff FLOWBEE INTERNATIONAL, INC.

6

7                     UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

10  ROBOCUT, INC., a Colorado corporation,     )  Case No. C 04 0979 MEJ
                                               )
11                            Plaintiff,        )  **NOTICE OF MOTION AND MOTION**
                                               )  **FOR PRELIMINARY INJUNCTION**
12         vs.                                  )  **AND MEMORANDUM OF POINTS AND**
                                               )  **AUTHORITIES IN SUPPORT THEREOF**
13  FLOWBEE INTERNATIONAL, INC., a             )
    California corporation,                     )  Date:    May 20, 2004
14                                              )  Time:    10:00 a.m.
                              Defendant.        )  Judge: Hon. Maria Elena James
15  _____       )
                                               )
16  FLOWBEE INTERNATIONAL, INC., a             )
    California corporation,                     )
17                                              )
      Counterclaimant and Third-Party Plaintiff, )
18                                              )
         vs.                                     )
19                                              )
    ROBOCUT, INC., a Colorado corporation,     )
20                                              )
      Counterdefendant,                          )
21                                              )
    and                                          )
22                                              )
    ALFRED NATRASEVCHI,                         )
23                                              )
      Third-Party Defendant.                     )
24  _____       )

25

26  NOTICE AND MOTION FOR PRELIMINARY
    INJUNCTION AND MPA IN SUPPORT THEREOF
    Case No. C 04 0979 MEJ



# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    Relief Sought . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    Statement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A.    THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
          1.    Counterclaimant Flowbee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
          2.    Counterdefendant Robocut . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    B.    ATTEMPTS TO RESOLVE THE DISPUTE PRIOR TO LITIGATION . . . . . . 6

III.   A PRELIMINARY INJUNCTION IS APPROPRIATE TO STOP
      COUNTERDEFENDANT'S TRADEMARK INFRINGEMENT . . . . . . . . . . . . . . . . . 6
    A.    STANDARD FOR PRELIMINARY INJUNCTION . . . . . . . . . . . . . . . . . . 6
    B.    COUNTERCLAIMANT IS LIKELY TO SUCCEED ON THE MERITS . . . . . . 7
          1.    Counterclaimant's Federally Registered Mark Is Valid And Protectable . 7
          2.    Counterdefendant's Unauthorized Use of the Flowbee Mark to Drive
               Traffic to its Web Sites Where Identical and Directly Competitive
               Goods Are Sold Is Likely to Cause Confusion, Mistake and
               Deception . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
               (1)    Counterclaimant's FLOWBEE Mark Is Strong and Entitled to the
                    Widest Scope of Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
               (2)    The Parties' Products Are Identical . . . . . . . . . . . . . . . . . . . . . 10
               (3)    Evidence of Actual Confusion Is Unnecessary . . . . . . . . . . . . . . 10
               (4)    The Parties Use Identical Marketing Channels . . . . . . . . . . . . . . 11
               (5)    The Ease of Internet Navigation Increases Likelihood of Consumer
                    Confusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
               (6)    Counterdefendant Has Evidenced a Strong Intent to Infringe . . . 12

VI.   IRREPARABLE HARM IS PRESUMED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VII.  BALANCE OF THE HARDSHIPS FAVORS COUNTERCLAIMANT . . . . . . . . . . . 14

VIII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . *passim*

*Americana Trading Inc v. Russ Berrie & Co.*, 966 F.2d 1284 (9th Cir. 1992) . . . . . . . . . . . . . 8

*Benda v. Grand Lodge of Int'l Assoc. of Machinists & Aerospace Workers*, 584 F.2d 308
(9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
174 F.3d 1036 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988) . . . . . . . . . . . . . . . . 6

*Charles Schwab & Co., Inc. v. Hibernia Bank*, 665 F. Supp. 800 (N.D. Cal. 1987) . . . . . . . . . 6

*Dep Corp. v. Opti-Ray, Inc.*, 768 F. Supp. 710 (CD Cal. 1991) . . . . . . . . . . . . . . . . . . . . . . . 13

*Dogloo, Inc. v. Doskocil Manufacturing Co., Inc.*, 893 F. Supp. 911 (C.D. Cal. 1995) . . . . . . . 11

*Eclipse Associate, Ltd. v. Data General Corp.*, 894 F.2d 1114 (9th Cir. 1990) . . . . . . . . . . 8, 10

*E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 457
(N.D.Cal. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*GoTo.Com, Inc. v. The Walt Disney Co., et al.*, 202 F.3d 1999 (9th Cir. 2000) . . . . . . . . *passim*

*Grupo Gigante S.A. de C.V. v. Dallo & Co., Inc.*, 119 F.Supp.2d 1083 (C.D. Cal. 2000) . . . . . 11

*Kendall-Jackson Winery, Ltd. v. E&J Gallo Winery*, 150 F.3d 1042 (9th Cir. 1988) . . . . . . . . 7

*Nutri/System, Inc. v. Con-Stan Industries, Inc.*, 809 F.2d 601 (9th Cir. 1987) . . . . . . . . . . . . 11

*Pacific Intern. Rice Mills, Inc. v. Rice Growers Association of California*,  14 U.S.P.Q. 2d 1659
(E.D. Cal. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Park 'N Fly v. Dollar Park and Fly, Inc.*, 782 F.2d 1508 (9th Cir. 1986) . . . . . . . . . . . . . . . . 10

*Playboy Enterprises, Inc. v. Netscape Communications*, 354 F.3d 1020 (9th Cir. 2004) . . . 9, 10

*Rodeo Collection, Inc. v. West Seventh*, 812 F.2d 1215 (9th Cir. 1987) . . . . . . . . . . . . 9, 10, 13

*Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115 (9th Cir. 1999) . . . . . . . . . . . . . . . 7

*///*
*///*
*///*

1

**TABLE OF AUTHORITIES** (cont'd)

2

**STATUTES**

3

15 U.S.C. §1051, et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

15 U.S.C. §1057(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5

15 U.S.C. § 1116(a) (Lanham Act §34(a)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

6

15 U.S.C. § 1125 (Lanham Act §43(a)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

7

California Business and Professions Code §17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

8

**MISCELLANEOUS**

9

4 J. McCarthy, *McCarthy on Trademarks and Unfair Competition*, (4th ed.2000) . . . . . . . . 8, 13

10

Schwarzer, W., et al., *Calif. Practice Guide: Federal Civil Procedure Before Trial*, The Rutter
Group, 2003, Section 7:45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE AND MOTION FOR PRELIMINARY
INJUNCTION AND MPA IN SUPPORT THEREOF
Case No. C 04 0979 MEJ                                    iii

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on May 20, 2004 at 10:00 a.m., or as soon thereafter as the matter may be heard, Counterclaimant Flowbee International, Inc. ("Counterclaimant" or "Flowbee"), by and through its counsel, will and hereby does move this Court for a preliminary injunction against Counterdefendant Robocut, Inc ("Counterdefendant" or "Robocut"), pursuant to Rule 65(a) of the Federal Rules of Civil Procedure.

This motion is made on the grounds that Counterclaimant will suffer irreparable harm unless Counterdefendant is enjoined from purchasing or trafficking in the FLOWBEE mark as a keyword from search engines, and using the FLOWBEE mark on its Web site, so as to drive traffic to Counterdefendant's competitive site in order to sell Counterdefendant's competitive products. Counterdefendant's conduct constitutes trademark infringement under 15 U.S.C. Section 1051, *et seq*, dilution under 15 U.S.C. Section 1125(c), trademark infringement under the common law of California, and unfair competition under the common law of California and California Business and Professions Code Section 17200 *et seq*.[1]

This motion is based on the following Memorandum of Points and Authorities, and the accompanying declarations filed herewith, all prior filed pleadings, and any other argument or evidence presented to this Court at or before the hearing on this motion.

**Relief Sought**

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, Counterclaimant Flowbee seeks a preliminary injunction preventing Counterdefendant from using the FLOWBEE mark on its Web site in metatags, in caches, or by purchasing the mark as a keyword from search engines, utilizing Counterclaimant's goodwill and mark so as to drive traffic to Counterdefendant's competitive site in order to sell Counterdefendant's competitive products.

---

[1] For purposes of this preliminary injunction motion, Counterclaimant only addresses the issue of infringement. Counterclaimant reserves its right to try its other claims at trial.

NOTICE AND MOTION FOR PRELIMINARY
INJUNCTION AND MPA IN SUPPORT THEREOF
Case No. C 04 0979 MEJ                                        1

**Statement of Issues**

1.   Does Counterdefendant's purchase of the term "flowbee" from commercial search engines and its repeated and excessive use of the FLOWBEE mark on its Web sites infringe Counterclaimant's rights in the federally registered mark FLOWBEE for hair clippers?

2.   Given Counterdefendant's infringement of Counterclaimant's mark, is there a presumption of irreparable harm in favor of Counterclaimant?

3.   Given Counterclaimant's long use and significant investment in the mark FLOWBEE, and Counterdefendant's continued use of its mark in the face of Counterclaimant's repeated demands it cease use, does the balance of hardships require injunctive relief for Counterclaimant?

**MEMORANDUM OF POINTS AND AUTHORITIES**

# I.   INTRODUCTION

Following demands made on Plaintiff Robocut and Plaintiff having filed its action for Declaratory Judgment, Counterclaimant brought this counterclaim against Counterdefendant Robocut for trademark infringement, dilution, cyber-piracy, and unfair competition. Counterclaimant is seeking an injunction to prevent Counterdefendant from infringing the FLOWBEE mark by using it on its Web sites and purchasing it as a keyword from search engines such as Google and Yahoo.

Counterclaimant owns all interest in the trademark FLOWBEE for haircutters. Declaration of Rick Hunts (hereinafter "Hunts Decl"), ¶¶2 and 3.  Counterclaimant adopted and began use of its FLOWBEE trademark in 1987.  Hunts Decl., ¶2.  Counterclaimant obtained a federal registration for the FLOWBEE trademark, Registration No. 1489925 in 1988 and which is now incontestible.  Hunts Decl., ¶3. Because Counterclaimant's mark is strong and entitled to broad protection, the parties' goods sold under the respective marks are identical, and the market

1   channels and customers for those goods are identical, Counterclaimant is likely to succeed on the

2   merits and will suffer irreparable injury unless an injunction is issued, the balance of the

3   hardships tips strongly in the Counterclaimant's favor.  Accordingly, a preliminary injunction

4   prohibiting Counterdefendant's use of Counterclaimant's trademark on its Web sites, in metatags

5   and in keywords is both necessary and appropriate.

6        To preserve Counterclaimant's rights in its marks, to prevent irreparable injury to

7   Counterclaimant's goodwill and reputation in the FLOWBEE mark, and to prevent confusion,

8   deception and mistake among consumers, Counterclaimant urges the Court to grant

9   Counterclaimant's Motion for Preliminary Injunction.

10  **II.    STATEMENT OF FACTS**

11       **A.    THE PARTIES**

12            **1.    Counterclaimant Flowbee**

13       Counterclaimant developed and began selling a patented, vacuum haircutter throughout

14  the United States under the federally registered trademark FLOWBEE beginning in 1987.  Hunts

15  Decl., ¶4.  The Flowbee haircutter typically retails between $59.95 to $69.95. Hunts Decl., ¶3.

16  Counterclaimant has spent over a million dollars advertising the FLOWBEE product since its

17  inception in 1987.  The Flowbee infomercial was one of the top-ten rated infomercials in the

18  1990's, and the product has been used in numerous movies, including  "Bubble Boy," "Sweet

19  Hereafter," "Angel Eyes" and "High School High."  Since 1987 Counterclaimant has sold

20  2,000,000 FLOWBEE hair clippers worldwide.  Hunts Decl., ¶3.

21       A search on Google of "flowbee" yields an ad for FLOWBEE wherein a link "sponsored"

22  by *www.haircut.com* boasts a price of $49.99 for the Flowbee haircutting system.  When the link

23  is clicked, it takes the Web user to Counterdefendant's site where a "comparison" of the

24  FLOWBEE product and the ROBOCUT product are designed to have the user conclude that the

25  FLOWBEE product is inferior and that ROBOCUT is the superior product and buy.  Hunts Decl.

26  NOTICE AND MOTION FOR PRELIMINARY
    INJUNCTION AND MPA IN SUPPORT THEREOF
    Case No. C 04 0979 MEJ                           3

1  ¶5.  Similarly, a search of "flowbee" on Yahoo yields a "Sponsor Result" offering FLOWBEE

2  for sale at $49.99.  The link sends one to the same comparison where Robocut's sales pitch is

3  offered.  Hunts Decl., ¶6.  Finally, at Overture, a search engine where Counterdefendant

4  purchases "flowbee" as a keyword, statistics show that "flowbee" generates more than 8,800

5  searches a month; *www.flowbee.com*, the home of the trademark owner, receives only about 400

6  of the hits.  Hunts Decl., ¶7.

7          Beginning in January 2004 and for a period of about a month Counterclaimant was

8  running 30-second spots on national television for its FLOWBEE haircutters, including the

9  Discovery Channel, the Travel Channel, and others.  When Counterclaimant realized that when

10  ads ran and consumers conducted Internet searches, those searches were more often than not

11  landing Web users at Counterdefendant's sites, not at Counterclaimant's site which was the

12  purpose for running the ads.  Hunts Decl., ¶11.

13              **2.    Counterdefendant Robocut**

14          Counterdefendant began selling its Robocut vacuum haircutter in approximately 1986.

15  Complaint, ¶7.  In recent years it began selling on the Internet at a number of sites, including

16  *www.robocut.com*, *www.haircut.com*, and *www.betterthanflowbee.com*.  Hunts Decl., ¶8.  In

17  mid-February, 2004 Counterclaimant's principal, Rick Hunts, learned that Counterdefendant was

18  operating the *www.betterthanflowbee.com* Web site and that on the site Counterdefendant was

19  offering a Robocut product it called the "FLOWBEE DELUXE model."  Upon further

20  examination of the Web sites, Hunts discovered that Counterdefendant's sites used the term

21  "flowbee" in its metatags.  Hunts Decl., ¶8.

22          Thereafter, on February 9, 2004 Counterclaimant's counsel sent a cease-and-desist letter

23  to Counterdefendant demanding that he cease using the FLOWBEE mark.  Complaint, ¶16, Exh.

24  A.  Counterdefendant then discontinued selling the FLOWBEE DELUXE model on its Web site

25  (Hunts Decl., ¶9), but on February 20 it responded through counsel to the demand letter.

26  NOTICE AND MOTION FOR PRELIMINARY
   INJUNCTION AND MPA IN SUPPORT THEREOF
   Case No. C 04 0979 MEJ                          4

1   Complaint, ¶16, Exh. B.  In the response Counterdefendant took the position that it was free to

2   make use of the mark in metatags and elsewhere because, at its site where it sold both

3   FLOWBEE haircutters acquired through third parties and ROBOCUT haircutters, it was making

4   fair use.  Complaint, ¶16, Exh. B.  Subsequently Counterclaimant became aware and complained

5   that Counterdefendant was engaging in the practice of buying "flowbee" as a keyword from

6   Google and Yahoo, among other search engines; the word and consequently Counterdefendant's

7   sites were then stored as data in the search engine caches and elsewhere.  Complaint, ¶18.  These

8   complaints were registered by counsel for Counterclaimant in Boston and then, following

9   Plaintiff's preemptive suit brought in the Northern District, by Counterclaimant's counsel in this

10  action.  Declaration of Lawrence G. Townsend ("Townsend Decl."), ¶3.

11      A review of Robocut's home page reveals that Robocut is making gratuitous, if not

12  excessive, use of the FLOWBEE mark in a "disclaimer."  The statement appears again on the

13  bottom of the "Flowbee compared" page as well.  Hunts Decl., Exh. B.  The statement uses the

14  FLOWBEE mark four times, and it is printed in HTML code which is readable by search engines

15  looking for, among other things, the frequency of appearance of the word "flowbee" throughout

16  the Web.  Hunts Decl., ¶10.

17      A review of the records available online from the Colorado Secretary of State reveals that

18  Plaintiff and Counterdefendant Robocut has been "delinquent" since June of 2003.[2]  Townsend

19  Decl. ¶4, Exh. B.  It also reveals that Counterdefendant has not been making any fair use of

20  FLOWBEE or the term and designation Betterthanflowbee.com.  Robocut adopted

21  "Betterthanflowbee.com" as a dba for Robocut, Inc. and so announced in its 2001 filing of a

22  "Certificate of Assumed or Trade Name" with the Secretary of State.  Townsend Decl. ¶4, Exh.

23

24  _____

25      [2]  "A foreign corporation whose powers have been suspended in its home state for
    nonpayment of corporate taxes lacks capacity to sue in California."  Schwarzer, W., et al., *Calif.*
    *Practice Guide: Federal Civil Procedure Before Trial*, The Rutter Group, 2003, Section 7:45.

26  NOTICE AND MOTION FOR PRELIMINARY
    INJUNCTION AND MPA IN SUPPORT THEREOF
    Case No. C 04 0979 MEJ                          5

1  C.  As to its purpose in adopting a new domain name containing Counterclaimant's FLOWBEE

2  mark, Counterdefendant announced in the latter filing: "Internet service to a comparison between

3  products and to sell the products on line and via the telephone.  **A d.b.a. would aid in internet**

4  **search engine listings**."  Townsend Decl. ¶4, Exh. C.  (Emphasis added)

5      **B.  ATTEMPTS TO RESOLVE THE DISPUTE PRIOR TO LITIGATION**

6      Counterclaimant first became aware of the Counterdefendant's infringing use of the

7  FLOWBEE mark in mid-February.  Hunts Decl., ¶4 .  After an initial exchange of letters, a

8  dialogue was held between counsel for Counterclaimant in Boston and Counterdefendant's

9  counsel in San Francisco.  When Counterdefendant filed suit in San Francisco for Declaratory

10  Judgment and counsel for Counterclaimant was engaged, those discussions continued until they

11  broke down on approximately March 25, 2004.

12  **III.  A PRELIMINARY INJUNCTION IS APPROPRIATE TO STOP**
       **COUNTERDEFENDANT'S TRADEMARK INFRINGEMENT**

13

14      Because there is no adequate legal remedy at law for damage caused by trademark

infringement, injunctive relief is the only option to prevent irreparable injury to a trademark
15
owner.  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988).  Federal courts
16
have the power to grant injunctions to prevent infringement of a federally registered trademark
17
"according to the principles of equity and upon such terms as the court may deem reasonable."
18
15 U.S.C. § 1116(a) (Lanham Act §34(a)); 15 U.S.C. §1125 (Lanham Act §43(a)); *see Charles*
19
*Schwab & Co., Inc. v. Hibernia Bank*, 665 F.Supp. 800, 803 (N.D. Cal. 1987).  "[A] preliminary
20
injunction is an appropriate remedy for infringement of a registered trademark."  *See Charles*
21
*Schwab*, 665 F.Supp. at 803.
22
    **A.  STANDARD FOR PRELIMINARY INJUNCTION**
23
    In the Ninth Circuit, a party demonstrates the necessity for a preliminary injunction by
24
establishing "either (1) a combination of 'probable success on the merits' and 'the possibility of
25

26  NOTICE AND MOTION FOR PRELIMINARY
INJUNCTION AND MPA IN SUPPORT THEREOF
Case No. C 04 0979 MEJ         6

1   irreparable injury' or (2) the existence of 'serious questions going to the merits' and that 'the

2   balance of hardships tips sharply in his favor."  *GoTo.Com, Inc. v. The Walt Disney Co., et al.*,

3   202 F.3d 1999, 1205 (9th Cir. 2000) (*quoting Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719,

4   723 (9th Cir. 1985)).  The Ninth Circuit treats this analysis not as two separate tests, but rather as

5   "extremes of a single continuum."  *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115,

6   1119 (9th Cir. 1999) (*quoting Benda v. Grand Lodge of Int'l Assoc. of Machinists & Aerospace*

7   *Workers*, 584 F.2d 308, 315 (9th Cir. 1978)).  The degree of hardship required is insubstantial

8   when there is a strong showing of probable success of the merits.  *Id.*  Under either test, a

9   preliminary injunction is appropriate here due to the strong likelihood of success on the merits

10  and irreparable harm to the moving party, as well as the hardships which clearly tip in favor of

11  the moving party.

12  **B.   COUNTERCLAIMANT IS LIKELY TO SUCCEED ON THE MERITS**

13       To prevail on a trademark infringement action, the moving party must establish that it has

14  a valid, protectable mark and that a defendant's use of a similar mark is likely to cause confusion,

15  mistake, or deception.  15 U.S.C. §1114(1) (Lanham Act §32(1)); 15 U.S.C. §1125(a) (Lanham

16  Act §43(a)); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d

17  1036, 1046 (9th Cir. 1999).

18           **1.   Counterclaimant's Federally Registered Mark is Valid And**
                 **Protectable**
19
         Counterclaimant's FLOWBEE mark is an inherently distinctive,[3] federally registered
20
    mark.
21

22

23  ─────────────────

24       [3]  *See Kendall-Jackson Winery, Ltd. v. E&J Gallo Winery*, 150 F.3d 1042, 1047, n.9 (9th Cir.
    1988) (discusses the degrees of distinctiveness and protectability of a mark).
25

26  NOTICE AND MOTION FOR PRELIMINARY
    INJUNCTION AND MPA IN SUPPORT THEREOF
    Case No. C 04 0979 MEJ                             7

1    A certificate of federal registration of a trademark is "prima facie evidence of the validity

2    of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use

3    the mark in commerce." 15 U.S.C. §1057(b).  As a registered trademark, the FLOWBEE mark is

4    "presumed to be distinctive and should be afforded the utmost protection." *Americana Trading*

5    *Inc v. Russ Berrie & Co.*, 966 F.2d 1284, 1287 (9th Cir. 1992) (citations omitted).

6    Counterclaimant's mark is inherently distinctive because it is fanciful.  A fanciful mark is

7    a coined word or one made up purely for the purpose of serving as a trademark.  They are the

8    strongest of all marks; their uniqueness and distinctiveness will likely make a strong impact on a

9    buyer's mind.  4 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th ed. 2000),

10   §11:11.  Examples include CLOROX, KODAK and EXXON.

11            **2.     Counterdefendant's Unauthorized Use of the Flowbee Mark to Drive
                       Traffic to its Web Sites Where Identical and Directly Competitive**
12            **Goods Are Sold Is Likely to Cause Confusion, Mistake and Deception**

13   The central factor in determining liability in a trademark infringement action is whether

14   the unauthorized use of the trademark is likely to cause confusion.  15 U.S.C. §1114(1) (Lanham

15   Act §32(1)); 15 U.S.C. §1125(a) (Lanham Act §43(a)); *GoTo.com*, 202 F.3d at 1205.  Thus, at

16   the preliminary injunction stage, the moving party must establish that it is "likely to be able to

17   show . . . a likelihood of confusion" resulting from the defendant's use of the disputed mark.

18   *GoTo.com*, 202 F.3d at 1205 (*quoting Brookfield Communications*, 174 F.3d at 1052 fn. 15).

19   Such confusion can be as to the source, relationship or sponsorship of the goods.  *Eclipse Assoc.,*

20   *Ltd. v. Data General Corp.*, 894 F.2d 1114, 1118 (9th Cir. 1990).  The Ninth Circuit has

21   established an eight-factor test to determine likelihood of confusion.  The factors are as follows:

22            1. Strength of the mark;
              2. Relatedness or proximity of the goods;
23            3. Similarity of the marks;
              4. Evidence of actual confusion;
24            5. Marketing channels used;
              6. Degree of care likely to be exercised by purchaser;

25

26   NOTICE AND MOTION FOR PRELIMINARY
     INJUNCTION AND MPA IN SUPPORT THEREOF
     Case No. C 04 0979 MEJ                          8

7. Defendants' intent in selecting the mark; and,

8. Likelihood of expansion of the product.

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

In *Playboy Enterprises, Inc. v. Netscape Communications*, 354 F.3d 1020 (9th Cir. 2004), involving a claim of trademark infringement arising out trafficking in keywords claimed to be trademarks, the Ninth Circuit stated: "In the Internet context courts must be flexible in applying the factors, as some may not apply." *Id.* At 1026.

Analysis of the facts of this case under the eight factor test leads to only one conclusion—the use by Counterdefendant of the FLOWBEE mark is likely to cause confusion resulting in irreparable harm to Counterclaimant, thereby warranting entry of a preliminary injunction.

**(1)     Counterclaimant's FLOWBEE Mark is Strong and Entitled to the Widest Scope of Protection**

The strength of a mark is defined as its tendency to identify a good with a particular source. *Rodeo Collection, Inc. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987).  As set forth above, FLOWBEE is a coined word, highly distinctive, and serves purely to identify Counterclaimant as the source of its vacuum haircutters.

Moreover, substantial advertising and media attention for FLOWBEE haircutters has further bolstered the strength of Counterclaimant's mark.  Approximately $7,000,000 has been invested in FLOWBEE informercials since 1987.  The FLOWBEE infomercial was one of the top-ten rated infomercials in the 1990's, and the product has been used in numerous movies, including "Bubble Boy," "Sweet Hereafter," "Angel Eyes" and "High School High."  Since 1987 Counterclaimant has sold approximately 2,000,000 FLOWBEE hair clippers worldwide.  Hunts Decl., ¶3.

1        **(2)      The Parties' Products are Identical**

2            It is undisputed that both parties sell vacuum hair clippers.  Thus, the parties' goods are

3    identical.  Thus, the identity of goods factor clearly weighs in favor of a finding of likelihood of

4    confusion.

5        **(3)      Evidence of Actual Confusion is Unnecessary**

6            In assessing likelihood of confusion, the Ninth Circuit has repeatedly held that evidence

7    of actual confusion "is not determinative."  *AMF, Inc.*, 599 F.2d at 353; *see also, Eclipse Assoc.*,

8    894 F.2d at 1118; *Park 'N Fly v. Dollar Park and Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986).

9    Since, "[t]he absence of actual confusion will not defeat an otherwise successful claim of

10   infringement" (*Gallo Nero*, 782 F.Supp. at 465), evidence of actual confusion is therefore not

11   necessary to a finding of likelihood of confusion.  *See, Rodeo Collection*, 812 F.2d at 1219.

12           At present Counterclaimant is not aware of any actual consumer confusion.  This is not

13   surprising however, as the courts have long recognized that evidence of actual confusion is very

14   difficult to garner.  *Brookfield Communications*, 174 F.3d at 1050.

15           In *Playboy, supra*, the court reversed the granting of summary judgment in favor of

16   defendant, finding that there were issues of fact and that Playboy had presented substantial issues

17   of fact in claim of "initial confusion" akin to *Brookfield*.  *Id.* a 1025.  In *Brookfield* the court

18   reversed the trial court's refusal to grant a preliminary injunction, finding that search engines

19   using metatags would lead users to defendant's site, and upon accessing the site, users might

20   realize that it is not the trademark owner's site.  Nevertheless, the user may decide to stay and

21   purchase there or use the site that had misappropriated the goodwill of the trademark owner.  *Id.*

22   174 F.3d at 1057.

23           The absence of any known actual confusion weighs neither for nor against a finding of

24   likelihood of confusion.

25

26   NOTICE AND MOTION FOR PRELIMINARY
     INJUNCTION AND MPA IN SUPPORT THEREOF
     Case No. C 04 0979 MEJ                                        10

1    (4)    **The Parties Use Identical Marketing Channels**

2        "Convergent marketing channels increase the likelihood of confusion.  Therefore, the

3    courts examine the proximity of the marketing channels to one another and whether direct

4    competition exists."  *Nutri/System, Inc. v. Con-Stan Industries, Inc.*, 809 F.2d 601, 606 (9th Cir.

5    1987).  Where the parties are both attempting to reach the same market, there is necessarily some

6    convergence of marketing channels.  *Grupo Gigante S.A. de C.V. v. Dallo & Co., Inc.*, 119

7    F.Supp.2d 1083, 1095 (C.D. Cal. 2000).

8        In this case both parties rely heavily on the Internet to sell their competing vacuum

9    haircutters; the products have similar, if not identical, marketing channels as a matter of law.

10   *Gallo Nero*, 782 F.Supp. at 464; *see also Dogloo, Inc. v. Doskocil Mfg. Co., Inc.*, 893 F.Supp.

11   911, 916 (C.D. Cal. 1995) (converging marketing channels found where products sold in same

12   types of stores); *Pacific Intern. Rice Mills, Inc. v. Rice Growers Ass'n of California*, 14

13   U.S.P.Q.2d 1659, 1661 (E.D. Cal. 1989) (same).

14       The marketing channels factor weighs heavily in favor of a finding of likelihood of

15   consumer confusion.

16   (5)    **The Ease of Internet Navigation Increases Likelihood of Consumer
           Confusion**

17

18       Customer care in purchasing is analyzed based on the standard for a "typical buyer

     exercising ordinary caution."  *AMF, Inc.*, 599 F.2d at 353.  Confusion is more likely when the

19
     marks are associated with "impulse" products.  *Gallo Nero*, 782 F. Supp. at 464-465 (*citing Grey*

20
     *v. Campbell Soup Co.,* 650 F.Supp. 1166, 1175(C.D. Cal.1986), *aff'd*, 830 F.2d 197 (9th Cir.

21
     1987)).

22       The FLOWBEE product typically retails between a low of $59.95 and a high of $69.95.

23
     Hunts Decl., ¶3.  In this case Counterdefendant uses the keyword "flowbee" to create a banner ad

24
     or "sponsor" link that offers FLOWBEE at the almost impossibly low price of $49.99.  Hunts

25

26   NOTICE AND MOTION FOR PRELIMINARY
     INJUNCTION AND MPA IN SUPPORT THEREOF
     Case No. C 04 0979 MEJ                              11

1   Decl., ¶5.  All  Internet users must do is click a mouse to find themselves at the Robocut site.  As

2   stated in *GoTo.com, supra:*

3   > Navigating amongst web sites involves practically no effort
>  whatsoever, and arguments that Web users exercise a great deal of
4   > care before clicking on hyperlinks are unconvincing.  *Id.* 202 F.3d
>  at 1209.

5

6   Once at Counterdefendant's site, the user is given a slanted, if not misleading,

    comparison and sold on a ROBOCUT haircutter at $44.99, $5.00 cheaper than the bargain-priced
7
    FLOWBEE offered.  Hunts Decl., ¶5.
8
    The level of consumer care in purchasing the parties' products favors a finding of
9
    likelihood of confusion.
10
    **(6)    Counterdefendant Has Evidenced a Strong Intent to Infringe**
11
    Counterclaimant learned of the infringing actions of Counterdefendant when it was
12
    discovered in February, 2004 that Counterdefendant was actually selling a FLOWBEE DELUXE
13
    model that was, in fact, a Robocut haircutter.  Hunts Decl., ¶4.  Although it appears that
14
    Counterdefendant is no longer offering a FLOWBEE DELUXE (and no preliminary injunction is
15
    sought on sale of the latter), it is strong evidence of the Counterdefendant's overall intent and
16
    method of doing business.  In addition, Counterdefendant admits that it is conducting business
17
    under a trade name that contains Counterclaimant's mark, "BetterthanFlowbee.com," having
18
    filed a "Certificate of Assumed or Trade Name in Colorado."  Townsend Decl., ¶4, Exh. C.  In
19
    addition, Counterdefendant's intent in adopting the trade name with the FLOWBEE mark in it
20
    was, in Counterdefendant's own words, to "aid in internet search engine listings."  Townsend
21
    Decl., ¶4, Exh. C.
22
    Thus, this factor favors a finding of likelihood of confusion.
23
    ///
24
    ///
25

26  NOTICE AND MOTION FOR PRELIMINARY
    INJUNCTION AND MPA IN SUPPORT THEREOF
    Case No. C 04 0979 MEJ                                    12

## VI.     IRREPARABLE HARM IS PRESUMED

Once a trademark owner has shown a likelihood of success on the merits, the resultant loss of control over the trademark and the risk to the goodwill and reputation associated therewith constitutes irreparable injury warranting a preliminary injunction. *Dep Corp.*, 768 F.Supp. at 710 (*citing Apple Computer v. Formula Int'l, Inc.*, 725 F.2d 521, 526 (9th Cir. 1984)). Counterclaimant's demonstrated probable success on the merits creates a presumption that Counterdefendant's conduct will result in irreparable injury to Counterclaimant. The loss of control over Counterclaimant's reputation and the loss of goodwill associated with its well-known FLOWBEE mark cannot be compensated by money; an injunction is imperative to the protection of Counterclaimant's mark and preservation of its significant investment.

The very purpose of a trademark is to identify a product as emanating from a single source, allowing the public to rely on the mark for consistency and quality. *McCarthy*, §3:3. The loss of control of the mark removes the ability of the owner to guarantee the public such consistency and quality. The magnitude of this loss caused by the inability to control one's trademark is thus impossible to assess. *Rodeo*, 812 F.2d at 1220.

Over the course of the last seventeen years, Counterclaimant has built up considerable value and goodwill in its FLOWBEE brand. Such good will is evidenced by the sale of over two million hair clippers since 1987 and the widespread familiarity with Counterclaimant's national infomercials and widely-recognized brand name. Hunts Decl., ¶3.

As such, harm to the Counterclaimant's reputation is irreparable. Robocut purports to be in the business of selling clippers that vacuum hair, but it is more adept at sucking away the hard-earned good will of Counterclaimant, represented by its FLOWBEE mark. Such harm can only be prevented by an order from this Court enjoining Counterdefendant's further use of the FLOWBEE trademark.

1   **VII.   BALANCE OF THE HARDSHIPS FAVORS COUNTERCLAIMANT**

2           It should be noted that Counterclaimant's demonstration of likelihood of success on the

3   merits and irreparable injury alone warrant preliminary injunctive relief. *GoTo.com*, 202 F.3d at

4   1209. However, the balance of hardships also tips sharply in Counterclaimant's favor.

5           As demonstrated above, there exists a likelihood of confusion, or certainly initial

6   confusion. Counterdefendant has steadfastly refused to cease use of its exploitation of

7   Counterclaimant's goodwill and the FLOWBEE mark. All that is being asked of

8   Counterdefendant is that it has chosen its path and is not now in a position to complain that the

9   path is fraught with hardship. The hardship to Counterdefendant is minor; it is free to use search

10  terms such as "robocut" and "hair clippers" and otherwise conduct its business lawfully in a way

11  that does not siphon another's goodwill. If this Court does not enter a preliminary injunction

12  stopping Counterdefendant's use of the FLOWBEE mark, Counterclaimant will suffer

13  irreparable injury during the long period leading up to trial and a final verdict. The hardships

14  favor Counterclaimant and the granting of the requested preliminary injunction.

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25

26  NOTICE AND MOTION FOR PRELIMINARY
    INJUNCTION AND MPA IN SUPPORT THEREOF
    Case No. C 04 0979 MEJ                                    14

1   **VIII.   CONCLUSION**

2           For all the foregoing reasons, Counterclaimant respectfully requests that the Court

3   preliminarily enjoin Counterdefendant's purchase or use of the FLOWBEE mark as a keyword

4   search term from any of the commercial search engines and from using the term on its Web site

5   as HTML searchable code.

6

7   DATED: April 15, 2004                        Respectfully submitted,

8                                                LAW OFFICES OF LAWRENCE G. TOWNSEND

9
                                                 By:   ____/s/ Lawrence G. Townsend_____
10                                                         Lawrence G. Townsend
                                                 Attorney for Defendant, Counterclaimant
11                                               and Third-Party Plaintiff
                                                 FLOWBEE INTERNATIONAL, INC.
12
    S:\LGT-TENA\Flowbee\Pleadings\PrelimInjunction.wpd
13

14

15

16

17

18

19

20

21

22

23

24

25

26   NOTICE AND MOTION FOR PRELIMINARY
     INJUNCTION AND MPA IN SUPPORT THEREOF
     Case No. C 04 0979 MEJ                           15

1  LAWRENCE G. TOWNSEND  (SBN 88184)
   LAW OFFICES OF LAWRENCE G. TOWNSEND
2  455 Market Street, 19th Floor
   San Francisco, California 94105
3  Telephone:  (415) 882-3288
   Facsimile:  (415) 882-3299
4
   Attorneys for Defendant, Counterclaimant and
5  Third-Party Plaintiff FLOWBEE INTERNATIONAL, INC.

6

7                      UNITED STATES DISTRICT COURT

8                     NORTHERN DISTRICT OF CALIFORNIA

9

10 ROBOCUT, INC., a Colorado corporation,    )  Case No. C 04 0979 MEJ
                                             )
11                           Plaintiff,      )  **[PROPOSED] ORDER GRANTING
                                             )  COUNTERCLAIMANT'S MOTION FOR
12         vs.                               )  PRELIMINARY INJUNCTION**
                                             )
13 FLOWBEE INTERNATIONAL, INC., a            )
   California corporation,                   )
14                                           )  Date:  May 20, 2004
                             Defendant.      )  Time:  10:00 a.m.
15 _____ )  Judge: Hon. Maria Elena James
                                             )
16 FLOWBEE INTERNATIONAL, INC., a            )
   California corporation,                   )
17                                           )
     Counterclaimant and Third-Party Plaintiff, )
18                                           )
           vs.                               )
19                                           )
   ROBOCUT, INC., a Colorado corporation,    )
20                                           )
     Counterdefendant                        )
21                                           )
   and                                       )
22                                           )
   ALFRED NATRASEVCHI,                       )
23                                           )
     Third-Party Defendant.                  )
24 _____ )

25

26         Counterclaimant Flowbee International's Motion for Preliminary Injunction came on for

27 hearing before this Court on May 20, 2004, Counterclaimant and Counterdefendant Robocut, Inc.

28
                                       1
   _____
   [Proposed] Order Granting Motion for Preliminary Injunction; Case No. C 04 0979 MEJ

1  appeared through their counsel of record.

2        Having considered the papers submitted by the parties and the arguments of counsel, and

3  good cause appearing for the reasons set forth below, Counterclaimant's motion for preliminary

4  injunction is GRANTED.

5        The Court finds that Counterclaimant has demonstrated a strong probability of success on

6  the merits by virtue of showing that Counterdefendant has used and trafficked in the FLOWBEE

7  mark in a manner that likely infringes Counterclaimant's rights in the mark and that

8  Counterdefendant will likely continue to carry on such infringing acts unless immediately

9  enjoined by this Court.

10        The Court finds that Counterclaimant has presented sufficient evidence to show that:

11        a)    Counterclaimant is likely to prevail on the merits of its action in showing that

12  Counterdefendant has infringed Counterclaimant's trademark;

13        b)    Counterdefendant's actions have caused and will continue to cause immediate and

14  irreparable damage, injury and loss to Counterclaimant, fr which monetary compensation will not

15  afford adequate relief; and

16        c)    The balance of the hardships favors the Counterclaimant.

17

18        **IT IS HEREBY ORDERED** that pending trial in this matter:

19        1.    Counterdefendant Robocut, Inc., its agents, servants, officers, directors,

20  employees, and all others affiliated with it, shall immediately cease purchasing from Internet

21  search engines the keyword "flowbee" or any name, mark or word confusingly similar to

22  Counterclaimant's FLOWBEE mark.

23        2.    Counterdefendant Robocut, its agents, servants, officers, directors, employees,

24  and all others affiliated with it, shall immediately cease using or publishing the mark or term

25  FLOWBEE on its Web Site(s) in HTML searchable code in a manner searchable by Internet

26  search engines..

27

28

2

1    **IT IS SO ORDERED.**

2

3

4

5    DATED: _____, 2004          By _____

6                                                    United States District Judge

7    S:\LGT-TENA\Flowbee\Pleadings\PrelimInjunction-Order.wpd

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    3