IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| FLOWBEE INTERNATIONAL, INC. and § <br> FLOWBEE HAIRCUTTER § <br> LIMITED PARTNERSHIP, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> GOOGLE, INC., § <br> § <br> Defendant. § | § <br> § <br> § <br> § <br> § CIVIL ACTION NO. 2:09-cv-199 <br> § <br> § JURY TRIAL DEMANDED <br> § <br> § |

**PLAINTIFFS' RESPONSE TO DEFENDANT
GOOGLE, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(3)**

Plaintiffs Flowbee International, Inc. ("Flowbee Int'l") and Flowbee Haircutter Limited Partnership ("Flowbee L.P."), (collectively "Flowbee"), file this Response to Defendant Google, Inc.'s Motion to Dismiss Under Rule 12(b)(3), or alternatively, Motion to Transfer this Action to the Northern District of California.

**I.
SUMMARY OF THE ARGUMENT**

Ignoring an entire body of law articulated by this Court and the Fifth Circuit regarding the scope of forum selection clauses, Google claims that terms and conditions governing a Flowbee advertising account with Google, executed in 2007 ("2007 Advertising Terms"), require Plaintiffs to assert their claims solely in Santa Clara County, California. Google's claim fails. This Court can and should deny Google's Motion to Dismiss on the following separate and independent grounds:

- Google fails to satisfy its initial burden to show that the 2007 forum selection clause applies to Plaintiffs' claims;
- The 2007 forum selection clause does not apply to Plaintiffs' claims because (1) none of the claims in this lawsuit ultimately depend on a contractual relationship between Plaintiffs and Google; (2) none of the claims require interpretation of the 2007 Advertising Terms; and (3) Plaintiffs' claims involve

different operative facts than would exist if Plaintiffs asserted a claim for breach of the 2007 Advertising Terms against Google; and

- In all events, dismissal would be inappropriate because Google's wrongful conduct occurring before February 2007 is not subject to the 2007 forum selection clause.

In the alternative, Google requests this Court to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a), contending that consideration of the 2007 forum selection clause and the relevant public and private factors show good cause for the requested transfer. This Court can and should deny the Motion to Transfer on the following grounds:

- Google fails to satisfy its significant burden to show good cause for the requested transfer;
- The relative ease of access to proof weighs against transfer because Google fails to specifically identify any sources of proof in the Northern District of California and significant sources of proof regarding customer confusion caused by Google's trademark infringement and Plaintiffs' damages are located in Corpus Christi, Texas;
- The availability of compulsory process and cost of attendance for witnesses weighs against transfer because Google fails to identify the key witnesses to be called at trial or to state the subject matter of their testimony and Plaintiffs' have identified one non-party witness and three Flowbee employees in Corpus Christi, Texas who are expected to testify regarding the customer confusion created by Google's trademark infringement;
- Cases in the Northern District of California take almost six months longer to proceed to trial than cases in the Southern District of Texas;
- The citizens of the Southern District of Texas have a substantial interest in correcting any wrongdoing on the part of companies that do business on a national basis;
- The Southern District of Texas is more familiar with the law governing Plaintiffs' five causes of action asserted under Texas statutory and common law and the choice of law clause in Google's 2007 Advertising Terms does not apply to Plaintiffs' claims; and
- The 2007 forum selection clause and Flowbee Int'l's prior defense of litigation (which terminated in 2004) in California does not negate Plaintiffs' choice of forum in Corpus Christi, Texas.

## II.
## FACTUAL BACKGROUND

Flowbee is the main manufacturer of vacuum haircutters worldwide. Flowbee's sales occur primarily on the World Wide Web through Flowbee's Internet based store at [www.flowbee.com](www.flowbee.com). (Compl. ¶ 14.) Flowbee has been the principal manufacturer of vacuum haircutters since 1987. Flowbee has gained worldwide recognition and has become a well-known product in its classification. (Compl. ¶ 15.) Flowbee is headquartered in Corpus Christi, Texas. (Attach. 1, Decl. R. Hunts ¶ 3.)

In 1987, Rick Hunts, founder of Flowbee and inventor of the vacuum haircutter, commissioned the trademark "Flowbee" (Registration Number: 1489925). (Compl. ¶ 17.) Flowbee has invested in worldwide advertising and marketing in order to build the fame, reputation, and goodwill of the Flowbee trademark. Through Flowbee's actions, and because of widespread and favorable public acceptance and recognition, the Flowbee trademark has become a distinctive designation of the source of origin of Flowbee's goods and products. The Flowbee trademark has become uniquely associated with Flowbee and is an asset of incalculable value as a symbol of Flowbee, its quality goods and products, and its goodwill and reputation. The Flowbee trademark has become "famous" within the meaning of the dilution provisions of the Lanham Act, 15 U.S.C. § 1125(c). (Compl. ¶¶ 25 – 27.)

Defendant Google operates an Internet search engine. (Compl. ¶ 3.) Google advertises, solicits clients, leases office space, and conducts substantial amounts of business in the State of Texas and within the Southern District of Texas. (Compl. ¶ 9.) To use Google's search engine, a web user enters a search term into Google's search engine. The Google search engine creates a list of hyperlinks ("links") to web pages that Google identifies as relevant to the search requested. These results are known as "organic search results." (Compl. ¶ 4.) Google generates revenue by displaying

advertising–known as "Sponsored Links"– above or beside these organic search results. Google allows advertisers to select particular key words that will create a Sponsored Link to the advertiser's website. (*Id*.) Included in the key words offered by Google that generate Sponsored Links are the trademarks of third parties. Google, therefore, is selling the unauthorized use of third-party trademarks, often to the competitors of the owners of the trademarks. (Compl. ¶ 5.)

Rick Hunts, President of Flowbee International, Inc., sent a "cease and desist" letter to Google in March 2004, complaining of Google's improper use of a trademarks owned by Flowbee International and demanding that Google refrain from further improper use of the trademarks. (Attach. 1, Decl. R. Hunts, Ex. A.) Plaintiffs Complaint challenges Google's unauthorized use of Plaintiffs' trademarks to divert consumers away from Plaintiffs' products and to the products of competitors. The Complaint states causes of action for (1) direct trademark infringement under the Lanham Act; (2) contributory trademark infringement under the Lanham Act; (3) vicarious trademark infringement under the Lanham Act; (4) false representation under the Lanham Act; (5) trademark dilution under the Lanham Act; (6) trademark infringement under Texas law; (7) violation of the Texas Trademark Anti-Dilution Act, Tex. Bus. & Comm. Code § 16.29; (8) unfair competition under Texas law; (9) misappropriation under Texas law; and (10) money had and received under Texas law. (Compl. ¶¶ 88 – 161.) The Complaint does not allege any breach of a contract between Plaintiffs and Google, any claims that ultimately depend on a contractual relationship between Plaintiffs and Google; or any claims requiring interpretation of a contractual relationship between Plaintiffs and Google. Nonetheless, Google claims that 2007 click-through form terms and conditions governing a Flowbee advertising account with Google requires Plaintiffs

to assert their claim solely in Santa Clara County, California, where Google's headquarters is located.

Rick Hunts, President of Flowbee International, Inc. created an advertising account with Google in or about March 2004. (Attach. 1, Decl. R. Hunts ¶ 5.) A 2002 version of the form Terms and Conditions for Google's AdWords Select Advertising Program ("2002 Advertising Terms") provided: "You agree that the exclusive venue for any disputes arising under this Agreement shall be the state and federal courts located in Santa Clara County, California." (Attach. 2, Decl. C. Goodpastor, Ex. A.) Neither Google nor Plaintiffs contend that this 2002 forum selection clause applies to Plaintiffs' claims.

In or about August 2006, Google apparently modified these terms and conditions governing their advertising accounts. According to Google's employee, Tracy Lee-Blumberg, Flowbee accepted these modified terms ("2007 Advertising Terms") on February 9, 2007. (Lee-Blumberg Decl. ¶ 10 & Ex. A.) The Preamble of the 2007 Advertising Terms states: "[t]hese Terms govern *Customer's [i.e., Plaintiffs'] participation in Google's advertising program(s)* ('Program') and, as applicable, any insertion orders or service agreements ('IO') executed by and between the parties and/or *Customer's* online management of any advertising campaigns." (Lee-Blumberg Decl., Ex. A.) Section 9 states: "All claims arising out of or relating to the Agreement or the Google Program(s) shall be litigated in the Federal or State courts of Santa Clara County, California, USA . . . ." (*Id.*)

# III.
# ARGUMENT

## A. THIS COURT SHOULD DENY GOOGLE'S MOTION TO DISMISS FOR IMPROPER VENUE.

Google moves to dismiss Plaintiffs' Complaint under Rule 12(b)(3) of the Federal Rules of Civil Procedure, contending that a forum selection clause in the 2007 terms and conditions governing Plaintiffs' advertising account with Google requires the parties to litigate Plaintiffs' claims in Santa Clara County, California. As shown below, Google's contention fails because (1) Plaintiffs' claims do not arise out of or relate to Plaintiffs' participation in Google's advertising program; and (2) in all events, Google fails to show that the forum selection clause on which it relies applies to Google's wrongful conduct occurring before February 9, 2007.

### 1. Google Fails to Satisfy Its Burden to Show That Plaintiffs' Claims Are Subject to the Forum Selection Clause in the 2007 Terms and Conditions Governing Plaintiffs' Advertising Account.

Google claims that Plaintiffs bear a "heavy burden of proof" to show that the forum selection clause on which its motion relies does not apply. (Mot. at 3-4.) This claim is incorrect. "When moving to dismiss for lack of proper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, the defendant has the burden to demonstrate affirmatively that the plaintiff filed the lawsuit in an improper venue." *Bounty-Full Entertainment v. Forever Blue Entertainment Group*, 923 F. Supp. 950, 957-58 (S.D. Tex. 1996) (*citing Meyers v. American Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982), *cert. denied,* 462 U.S. 110 (1983)); *accord Roach v. Bloom*, 2009 WL 667218, *2 (N.D. Tex. Mar. 16, 2009) (challenge to venue "is a privilege unique to defendants and is used as an affirmative defense"); *MacPhail v. Oceaneering Int'l*, 170 F. Supp. 2d 718, 720 (S.D. Tex. 2001); *Texas Marine & Brokerage v. Euton*, 120 F. Supp. 2d 611, 612 (E.D. Tex. 2000); *Sanders v. Seal Fleet*, 998 F. Supp. 729, 733 (E.D. Tex. 1998); *The Richards Group v. Smith*,

2001 WL 123989, at *1 (N.D. Tex. Jan. 12, 2001).[1] The party seeking enforcement of a forum selection clause has the burden to show that the claims and parties involved in the suit are subject to the forum selection clause. *Altvater Gessler-J.A. Baczewski Int'l (USA) v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009); *Cable-La v. William Communications*, 104 F. Supp. 2d 569, 574-75 (M.D.N.C. 1999). After the party seeking enforcement has established that the claims and parties are subject to the forum selection clause, "the burden shifts to the party resisting enforcement to rebut the presumption of enforceability . . . ." *Id.*[2]

As shown below, Google fails to satisfy its initial burden to prove that the claims in this lawsuit are subject to the forum selection clause. Accordingly, this Court should deny Google's Motion to Dismiss.

### 2. Plaintiffs' Claims Do Not Arise Out of or Relate to Plaintiffs' Participation in Google's Advertising Program.

Google's Motion to Dismiss ignores the first and most important part of the analysis regarding the application of a forum selection clause. "Before a Court can consider enforcing a forum selection clause, it first must decide whether the clause applies to the type of claims asserted in the lawsuit." *Smith v. Lucent Techs.*, 2004 WL 515769, at *7 (E.D. La. Mar. 16, 2004) (internal quotations omitted); *accord Transfirst*, 2007 WL 631276, at *11. "If the substance of the plaintiff's claims, stripped of their labels, does not fall within the scope of the forum selection clause, the clause cannot apply." *Gullion*, 2007 WL 294174 at *5. In making this determination, a court should "accept

---

[1] *But see Transfirst Holdings v. Phillips*, 2007 WL 631276, at *3 (N.D. Tex. Mar. 1, 2007); *Gullion v. JLG Serviceplus*, 2007 WL 294174, *5 (S.D. Tex. Jan. 29, 2007).

[2] Google's claim that Plaintiffs have a "heavy burden" of sustaining the venue is incorrect. (Mot. at 3 – 4.) Such a burden exists only for a party challenging the presumption of *enforceability* of a forum selection clause. *Ginter v. Belcher, Prendergrast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008). The party seeking to enforce the forum selection clause has the burden to show that the parties and the claims at issue are within the *scope* of that clause. *Altvater Gessler-J.A. Baczewski Int'l (USA)*, 572 F.3d at 89.

7

uncontroverted allegations in the plaintiff's complaint as true and resolve factual conflicts in the plaintiff's favor." *Id*.

To determine whether claims are within the scope of a forum selection clause, this Court has applied three tests: (1) whether the claims ultimately depend on the existence of the contractual relationship between the parties; (2) whether resolution of the claims relates to interpretation of the contract; and (3) whether the claims involve the same operative facts as a parallel claim for breach of contract. *Gullion*, 2007 WL 294174 at *5 (citing *Terra Int'l v. Miss. Chem.*, 119 F.3d 688, 694 (8th Cir.), *cert. denied*, 119 S. Ct. 629 (1997)). The Fifth Circuit applied this same analysis under similar facts in a trademark infringement lawsuit against another search engine, Yahoo, upholding the district court's denial of Yahoo's motion to dismiss based on a forum selection clause. The Fifth Circuit stated:

> American's claims against Yahoo are based on trademark infringement occurring through relationships between Yahoo and third parties. The claims do not depend on the contractual relationship between American and Yahoo, do not require interpretation of the Sponsored Search Agreement contract, and involve different operative facts than would exist if American brought a breach of contract claim against Yahoo . . . .

*In re Yahoo!*, 313 Fed. Appx. 722 (5th Cir. 2009). Other Circuit Courts have applied similar tests.[3]

In this case, the forum selection clause in the 2007 Advertising Terms does not apply to Plaintiffs' claims because (1) none of the claims in this lawsuit ultimately depend on a contractual relationship between Plaintiffs and Google; (2) none of the claims require interpretation of the 2007 Advertising Terms; and (3) Plaintiffs' claims

---

3  *Manetti-Farrow v. Gucci America*, 858 F.3d 509, 514 (9th Cir. 1988) (considering "whether resolution of the claims relates to interpretation of the contract"); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983) (forum selection clause applies to non-contract claims only when such claims "ultimately depend on the existence of a contractual relationship" between the parties); *Terra Int'l*, 119 F.3d at 694 (considering whether claims "involve the same operative facts as would a parallel claim for breach of contract"); *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993) (same).

8

involve different operative facts than would exist if Plaintiffs asserted a claim for breach of the 2007 Advertising Terms against Google. As admitted by Google's counsel at the Initial Pre-Trial Conference, Plaintiffs' "complaint is based on trademark infringement. *It does not arise out of the contract.*"[4] Plaintiffs do not plead any breach of contract by Google arising out of Flowbee's advertising with Google. Indeed, Flowbee's advertising on the Google network is simply not an issue in this case. Instead, Plaintiffs assert trademark infringement and related claims against Google arising out of Google's sale of the use of Plaintiffs' trademark to Plaintiffs' competitors. These claims would exist even if Plaintiffs had never advertised with Google and none of these claims require interpretation of the Google Advertising Terms. Likewise, these same facts would not allow Plaintiffs to plead a cause of action for breach of contract against Google. The forum selection clause relied upon by Google, therefore, does not apply to the claims asserted by Plaintiffs in this lawsuit.[5]

The United States District Court for the Eastern District of Virginia recently reached the same conclusion in a nearly identical case, denying Google's motion to dismiss for improper venue based upon the same forum selection clause asserted here. (Attach. 2, Decl. C. Goodpastor, Ex. C, *Rosetta Stone Ltd. v. Google, Inc.*, No. 1:09cv736 (E.D. Va. Sept. 21, 2009) (Order) & Ex. D, *Rosetta Stone Ltd. v. Google, Inc.*, No. 1:09cv736 (E.D. Va. Aug. 21, 2009) (Google Inc.'s Mem. Law Supp. Mot. Dismiss).) In *Rosetta Stone*, the plaintiff asserts claims for trademark infringement against Google arising from Google's unauthorized sale of Rosetta Stone's trademarks to third parties. Google

---

[4] (Attach. 2, Decl. C. Goodpastor, Ex. B at 4:25 – 5:2, Tr. Init. Pre-Trial Conf. (Sept. 23, 2009) (emphasis added).)

[5] Google's citation to *Greer v. 1-800-Flowers.com*, 2007 WL 3102178 (S.D. Tex. Oct. 3, 2007), is unavailing. In *Greer*, the plaintiff based his claims on the contract that contained the forum selection clause. *Id*. at *2 ("It is clear and unambiguous that the Privacy Policy on which Plaintiff bases his lawsuit is part of the Terms of Use containing the forum selection clause."). Unlike the plaintiff in *Greer,* Plaintiffs in this case do not assert a claim for breach of the 2007 Advertising Terms; none of the claims in this lawsuit ultimately depend on a contractual relationship between Plaintiffs and Google; none of the claims require interpretation of the 2007 Advertising Terms.

sought dismissal for improper venue, claiming that the forum selection clause in its August 22, 2006 contract–the identical clause relied upon by Google in this case–required the claims to be asserted in Santa Clara, California.  The Eastern District of Virginia rejected Google's claims and denied the motion to dismiss.  (Attach. 2, Decl. C. Goodpastor, Ex. C, *Rosetta Stone Ltd. v. Google, Inc.*, No. 1:09cv736 (E.D. Va. Sept. 21, 2009) (Order).)

Google asserts that the forum selection clause in the 2007 Advertising Terms "applies to Flowbee's claims," (Mot. at 4), contending that the forum selection clause is broader than the contract in which it is contained.  This contention not only ignores the controlling analysis of the Fifth Circuit and this Court regarding the scope of forum selection clauses, it also defies the plain language of the 2007 Advertising Terms and fundamental principles of contract interpretation.

The 2007 Advertising Terms state at the beginning: "These Terms govern *Customer's participation* in Google's advertising program(s) ("Program") and, as applicable, any insertion orders or service agreement ("IO") executed by and between the parties and/or *Customer's* online management of any advertising campaigns."  (Lee-Blumberg Decl., Ex. A at 1 (emphasis added).)  As a result, the forum selection clause–one of the "Terms" to which the preamble refers–does *not* apply to all matters concerning Google's AdWords Program, but is limited to matters concerning the "Customer's participation in Google's advertising program." (*Id.*)  Reading the forum selection clause and the Preamble together, as required by principles of contract interpretation,[6] leads to the conclusion that the scope of the forum selection clause is limited to claims arising out of or relating to the 2007 terms and conditions regarding Plaintiffs' advertising account or Plaintiffs' *participation* in Google's advertising

---

[6] *See* 11 Richard A. Lord, *Williston on Contracts* §32.5 (4th ed. Supp. 2009) ("contract will be read as a whole"); Restatement (Second) of Contacts § 202 (1981) ("A writing is interpreted as a whole.").

10

program. As Google concedes, Plaintiffs' complaint "does not arise out of the contract."[7] Nor do Plaintiffs' claims arise out of or relate to Plaintiffs' participation in Google's advertising program; they relate to Google's *unauthorized* sale of Plaintiffs' trademarks to third parties. The 2007 Advertising Terms do not include *any* reference to Google's sale of Plaintiffs' trademark to third parties.[8]

Even in the unlikely event this Court determines that Google's proposed interpretation of the forum selection clause has merit, it still must deny Google's Motion to Dismiss. If a contract is capable of more than one interpretation, it is ambiguous. *See* 11 Richard A. Lord, *Williston on Contracts* § 32.12 (4th ed. Supp. 2009). Any ambiguity in a forum selection clause must be construed against Google, the drafter of the click-through form contract. *Zapata Marine Service v. O/Y Finnlines*, 571 F.2d 208, 209 (5th Cir. 1978); *Keaty v. Freeport Indonesia*, 503 F.2d 955, 957 (5th Cir. 1974). *See also* Richard A. Lord, *Williston on Contracts* § 32.12 (4th ed. 1991) ("[A]ny contract of adhesion, a contract entered into without any meaningful negotiation . . . is particularly susceptible to the rule that ambiguities will be construed against the drafter.").[9]

In sum, Google has failed to satisfy its burden to show that the forum selection clause in the 2007 Advertising Terms applies to Plaintiffs' claims. Accordingly, this Court should deny Google's Motion to Dismiss.

---

[7] (Attach. 2, Decl. C. Goodpastor, Ex. C at 4:25 – 5:2, Tr. Init. Pre-Trial Conf. (Sept. 23, 2009) (emphasis added).)

[8] Further, all of the provisions of the Google Advertising Terms show that the Terms are directed exclusively at the advertising relationship between Google and Plaintiffs.

[9] Additionally, the language of the forum selection clause should be interpreted against Google, the party that caused the uncertainty to exist. *See* 11 Richard A. Lord, *Williston on Contracts* § 32.12 (4th ed. Supp. 2009). *Accord Insurance Co. of North America v. NNR Aircargo Service (USA)*, 201 F.3d 1111, 1114 (9th Cir. 2000).

### 3. Dismissal Is Unwarranted Because Google Fails to Show That the 2007 Forum Selection Clause Applies to All of Google's Wrongful Conduct.

The forum selection clause on which Google's Motion to Dismiss relies is included in a version of Google's Advertising Terms dated August 22, 2006. Google claims that the Plaintiffs executed this version of the Terms on February 9, 2007. (Lee-Blumberg Decl. ¶ 10.) As a result, Google's argument for dismissal applies only to wrongful conduct occurring *after* February 9, 2007.

As evidenced by a "cease and desist" letter sent by Flowbee International to Google,[10] Plaintiffs' claims arise from Google's wrongful conduct beginning, at the latest, in March 2004, almost *three years* before the parties purportedly executed the forum selection clause on which Google relies. Although Plaintiffs did not retain a copy of the 2002 Advertising Terms that apparently applied to any AdWords account in use before February 9, 2007, a copy of Google's 2002 Advertising Terms suggests that claims arising from conduct occurring before February 9, 2007 are *not* required to be litigated in Santa Clara County, California. (Attach. 2, Decl. C. Goodpastor, Ex. A.) The 2002 Advertising Terms state: "You agree that exclusive venue for any disputes *arising under this Agreement* shall be the state and federal courts located in Santa Clara County, California." (*Id.*) This clause clearly does not apply to the wrongful conduct of Google for which Plaintiffs seek relief. Indeed, Google's failure to assert this or any other pre-2007 contract as a basis for its Motion to Dismiss concedes this point. As a result, Google has failed to satisfy its burden to show that Plaintiffs' claims arising from conduct occurring before February 9, 2007 are subject to the forum selection clause on which Google relies. *Gullion*, 2007 WL 294174 at *7 (a contract's forum selection clause does not apply to disputes arising before execution of the contract); *Anselmo v. Univision Station Group*, 1993 WL 17173, *3 (S.D.N.Y. Jan. 15, 1993) (same); *Armco v. North Atl. Ins.*

---

[10] (Attach. 1, Decl. R. Hunts, Ex. A & ¶ 4.)

*Co.*, 68 F. Supp. 2d 330, 338-40 (S.D.N.Y. 1999) (same). Considering that most of Google's wrongful conduct is not subject to the 2007 forum selection clause, Google's requested dismissal should be denied. *Transfirst*, 2007 WL 631276 at 15 (refusing to enforce forum selection clause that would create piecemeal litigation).

In sum, Google has failed to satisfy its burden to show that the forum selection clause in the 2007 Advertising Terms applies to all of Plaintiffs' claims. Accordingly, this Court should deny Google's Motion to Dismiss.

**B.    THIS COURT SHOULD DENY GOOGLE'S REQUESTED TRANSFER UNDER 28 U.S.C. § 1404(a).**

In the alternative, Google requests this Court to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a), contending that consideration of the 2007 forum selection clause and the relevant public and private factors show good cause for the requested transfer. This contention fails. As shown below, Google fails to satisfy its significant burden to show good cause for transfer of this matter. Indeed, Google fails to address most of the private and public interest factors considered by this Court and the Fifth Circuit. Accordingly, this Court should deny Google's Motion to Transfer.

**1. Google Fails to Satisfy Its Significant Burden to Show Good Cause for the Requested Transfer.**

A party seeking transfer under 28 U.S.C. § 1404(a) must "*clearly* demonstrate that a transfer is 'for the convenience of parties and witnesses, in the interest of justice.'" *Doe II v. St. Stephen's Episcopal School*, 2009 WL 1835155, *4 (S.D. Tex. June 26, 2009) (quoting *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (emphasis added)). Although the plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, "it is nonetheless taken into account as it places a *significant burden* on the movant to show good cause for the transfer . . . ." *Doe II*, 2009 WL 1835155 at *4

13

(emphasis added); *accord Mid-Continent Cas. Co. v. Petroleum Sol'ns*, 629 F. Supp. 2d 759, 762 (S.D. Tex. 2009). A court, however, should not transfer a case if the only practical effect is to shift inconvenience from the moving party to the non-moving party. *Mid-Continent Cas. Co.*, 629 F. Supp. 2d at 762 (quoting *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 789 (S.D. Tex. 2005)).

Courts weigh eight private and public interest factors to determine whether transfer of venue under 28 U.S.C. § 1404(a) is warranted. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the costs of attendance for willing witnesses; and (4) all other practical problems that make a trial of a case easy, expeditious, and inexpensive." *Doe II*, 2009 WL 1835155 at *2 (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). The relevant public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; and (3) the familiarity of the forum with the law that will govern the case. *Id.*

As shown below, Google fails to satisfy its significant burden to show good cause for transfer of this matter. Indeed, Google fails to address most of the private and public interest factors considered by this Court and the Fifth Circuit. Accordingly, this Court should deny Google's Motion to Transfer.

**2. The Private Interest Factors Weigh Against Transfer.**
    a.   <u>Relative Ease of Access to Sources of Proof Does Not Favor Transfer.</u>

This factor weighs only slightly in the convenience analysis, "particularly since these factors have been given decreasing emphasis due to advances in copying technology and information storage." *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000); *see also In re Triton Ltd. Secs. Litig.*, 70 F. Supp. 2d 678, 690 (E.D. Tex.

1999). Although Google baldly asserts "it is highly likely that the weight of the evidence . . . [is] located in California," (Mot. at 11), it fails to identify such evidence or prove its location or existence. Even if such evidence existed, it would not warrant transfer because Plaintiffs' information relating to customer confusion caused by Google's trademark violations and the loss of profits and other damages incurred by Plaintiffs are located at Plaintiffs' business offices in Corpus Christi, Texas. (Attach. 1, Decl. R. Hunts ¶¶ 3 & 6.) *See Doe II*, 2009 WL 1835155 at *3 (location of evidence in transferee district does not warrant transfer when evidence also is located in original venue). Further, Google has made no showing that such evidence would be "so voluminous that [it] would be difficult to transport." *In re Triton*, 70 F. Supp. 2d at 690. Indeed, with present technology, over 10,000 pages of documents can be copied onto a single CD and delivered through the U.S. Mail. Accordingly, this factor does not weigh in favor of transfer.

    b. <u>The Availability of Compulsory Process and Cost of Attendance for Witnesses Weighs Against Transfer.</u>

A defendant seeking transfer bears the burden of ***clearly specifying*** the key witnesses to be called to testify at trial and making a statement of the topics that the testimony will cover. *Gullion*, 2007 WL 294174 at *8; *The CIT Group/Commercial Services v. Romansa Apparel, Inc.*, 2003 WL 169208 (N.D. Tex. Jan. 21, 2003) ("[T]he party requesting transfer must present the court with more than a general allegation that certain key witnesses are necessary; the movant must specifically identify key witnesses and outline the substance of their testimony."). "When the key witnesses are employees of the party seeking transfer, their convenience is entitled to less weight because that party will be able to compel their testimony at trial." *Ranger Security Detectors, Inc. v. Metorex, Inc.*, 2006 WL 504864 at *3 (W.D. Tex. Feb. 7, 2006) (internal quotations omitted). In this case, Google makes no attempt to identify witnesses, to distinguish

15

between party or non-party witnesses, or to state the topics on which such witnesses will testify. Instead, Google merely asserts that "it is highly likely that . . . witnesses are located in California, where Google is headquartered." (Mot. at 11.) Plaintiffs, on the other hand, have identified one non-party witness and three of Plaintiffs' employees that will testify regarding customer confusion caused by Google's unauthorized use of Plaintiffs' trademarks. (Attach. 1, Decl. R. Hunts ¶ 6.) Accordingly, these factors weigh heavily against transfer.

### 3. The Relevant Public Interest Factors Weigh Against Transfer.

#### a. The Administrative Difficulties Flowing from Court Congestion Weighs Heavily Against Transfer.

Google fails to address the relative congestion of the District Courts in the Northern District of California and the Southern District of Texas. According to the latest edition of *Federal Judicial Caseload Statistics* published by the Administrative Office of the U.S. Courts, a case in the Northern District of California takes almost six months longer to proceed to trial than a case in the Southern District of Texas.[11] Accordingly, this factor weighs against transfer.

#### b. The Local Interest In Having Localized Interests Decided at Home Weighs Against Transfer.

This factor weighs against transfer as well because the citizens of the Southern District have "a substantial interest in correcting any wrongdoing on the part of companies [that do business] on a national basis." *In re Triton*, 70 F. Supp. 2d at 691.

#### c. The Familiarity of the Forum With the Law That Will Govern the Case Weighs Against Transfer.

In addition to claims under the Lanham Act of 1946, Plaintiffs also assert claims under Texas law for (1) trademark infringement, (Compl. ¶¶ 135 – 140); (2) violation of the Texas Trademark Anti-Dilution Act, Tex. Bus. & Comm. Code § 16.29, (Compl. ¶¶

---

[11] (Attach. 2, Decl. C. Goodpastor, Ex. E.)

16

141 – 144); (3) unfair competition, (Compl. ¶¶ 145 – 149); (4) misappropriation, (Compl. ¶¶ 150 – 155); and (5) money had and received, (Compl. ¶¶ 156 – 161). Plaintiffs do not assert any claims under California law. This factor, therefore, weighs heavily against transfer because this Court has a greater interest in enforcing Texas law than the District Court for the Northern District of California. *Gullion*, 2007 WL 294174 at *8.

Google's claim that Plaintiffs' claims are governed by California law under the choice of law clause in the 2007 Advertising Terms is wholly without merit. The choice of law clause in the 2007 Advertising Terms states that "[t]he Agreement must be construed as if . . . governed by California law except for its conflicts of laws principles." (Lee-Blumberg Decl. Ex. 1 ¶ 9.) As shown above, Plaintiffs' claims neither allege breach of the Agreement nor require the Court to construe or interpret the Agreement. (See *supra* Part I.) Indeed, Google's counsel expressly stated in open Court that Plaintiffs' "complaint is based on trademark infringement. *It does not arise out of the contract*."[12] Accordingly, this factor weighs against transfer.

### 4. The 2007 Forum Selection Clause and Prior Litigation Do Not Negate Plaintiffs' Choice of Forum.

Google claims the Plaintiffs' choice of forum "should receive little weight because Flowbee agreed to litigate all disputes with Google relating to the AdWords program in the Northern District of California." (Mot. at 10.) This claim fails. As shown above, the forum selection clause in the 2007 Google Advertising Terms does not apply to Plaintiffs' claims. (See *supra* Part I.) A forum selection clause that does not apply to the dispute between the parties does not favor transfer of a case under 28 U.S.C. § 1404(a). *Sylvester Material v. John Carlo, Inc.*, 2005 WL 1176054, *4 (N.D. Ohio May 17, 2005) (denying transfer) ("[I]t is not clear whether the forum selection clause even

---

[12] (Attach. 2, Decl. C. Goodpastor, Ex. B at 4:25 – 5:2, Tr. Init. Pre-Trial Conf. (Sept. 23, 2009) (emphasis added).)

applies.  Consequently, the presence of a forum selection clause does not favor transfer in this case."); *Pax v. Veolia Water North America Operating Svcs.*, 347 F. Supp. 2d 281, 284 (W.D. Va. 2004) (denying transfer) (dispute forum selection clause does not favor transfer).[13]

Likewise, Flowbee International's defense of litigation (which terminated in 2004) filed by a competitor in California does not negate Plaintiffs' choice of forum in this case. (Mot. at 11.)  Robocut, Inc., a competitor of Plaintiffs, filed a complaint against Flowbee International in the Northern District of California, seeking a declaratory judgment finding that it had not infringed Flowbee International's trademark.  Under Rule 13 of the Federal Rules of Civil Procedure, Flowbee International was required to file its compulsory trademark infringement counterclaims with its answer or otherwise forfeit its right to assert such claims in a later suit.  Fed. R. Civ. P. 13(a).  Such "compulsory" conduct cannot reasonably be characterized a free and independent choice of forum by Flowbee International.  Moreover, Flowbee Haircutter was not a party to the California litigation.  Accordingly, Google faces a significant burden to show good cause for its requested transfer of this matter from Plaintiffs' original choice of forum.

In sum, Google has failed to satisfy its significant burden to show that the private and public interest factors warrant transfer for this case to the Northern District of California.  Accordingly, this Court should deny Google's Motion to Transfer.

---

[13] The two cases cited by Google do not warrant a different conclusion because they both involved valid forum selection clauses that applied to the claims asserted.  *United States v. Ross Group Constr.*, 2007 WL 3119691, *6 (W.D. Tex. Oct. 23, 2007) ( relying on "valid, unambiguous forum selection clause entered into by the parties"); *Azadi v. Berry Network*, 858 F. Supp. 84, 84-85 (E.D. Tex. 1994) (plaintiff claimed breach of a contract that contained "an unambiguous forum-selection clause").

## IV.
## CONCLUSION

For the foregoing reasons, this Court (1) should deny Defendant Google Inc.'s Motion to Dismiss Under Rule 12(b)(3) and (2) should deny Defendant Google Inc.'s Motion to Transfer this Action to the Northern District of California.

Dated: October 2, 2009

                                      Respectfully submitted,

By:    /s/ David T. Bright
       David T. Bright
       State Bar No. 02991490
       Federal Bar No. 8628
       WATTS GUERRA CRAFT, L.L.P.
       Tower II Building
       555 North Carancahua, Suite 1400
       Corpus Christi, Texas 78478-0801
       (361) 887-0500 Telephone
       (361) 887-0055 Telecopier

       ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL:

Mikal C. Watts
State Bar No. 20981820
Federal Bar No. 12419
WATTS GUERRA CRAFT, L.L.P.
Tower II Building
555 North Carancahua, Suite 1400
Corpus Christi, Texas 78478-0801
(361) 887-0500 Telephone
(361) 887-0055 Telecopier

Christopher V. Goodpastor
State Bar No. 00791991
Federal Bar No. 18505
WATTS GUERRA CRAFT L.L.P.
811 Barton Springs Road
Suite 725
Austin, Texas 78704
Telephone: (512) 479-0500
Facsimile: (512) 479-0502

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 2d day of October 2009, I electronically filed the foregoing with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the CM/ECF system of the court, which will send notification of such filing to the to individuals who have consented in writing to accept notification as service of this document by electronic means. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by first class mail today, October 2, 2009.

               /s/ *David T. Bright*
               David T. Bright