**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| FLOWBEE INTERNATIONAL, INC. and<br>FLOWBEE HAIRCUTTER<br>LIMITED PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, INC.,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. C-09-199<br><br>JURY TRIAL DEMANDED |

**DECLARATION OF CHRISTOPHER V. GOODPASTOR**

I, Christopher V. Goodpastor, pursuant to the provisions of 28 U.S.C. § 1746, declare:

1.       I am an attorney at law licensed to practice before the courts of the States of Texas and California and in the United States District Court for the Southern District of Texas.  I am an attorney with Watts Guerra Craft L.L.P., counsel for Plaintiffs Flowbee International, Inc. and Flowbee Haircutter Limited Partnership in this matter. I am fully familiar with the facts stated below and submit this declaration and the attached exhibits in support of Plaintiffs' Response to Defendant Google, Inc.'s Motion to Dismiss Under Rule 12(b)(3), or alternatively, Motion to Transfer This Action to the Northern District of California.  All of the statements of fact in this Declaration are true and correct according to my personal knowledge.

2.       Attached as Exhibit A is a true and correct copy of Declaration of Kyle M. Amborn, Esq., attached as Exhibit 3 to Plaintiff Rosetta Stone Ltd.'s Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss filed on September 9, 2009 in *Rosetta Stone Ltd. v. Google, Inc.*, Civil Action No. 1:09cv736, In the United States District Court for the Eastern District of Virginia, which I obtained from the PACER website, http://pacer.psc.uscourts.gov/cgi-bin/links.pl.

3.      Attached as Exhibit B is a true and correct copy of excerpts of the

Transcript of Initial Pretrial Conference in *Flowbee International, Inc. et. al. v. Google, Inc.*,

Civil Action No. C-09-199, In the United States District Court for the Southern District

of Texas, dated September 23, 2009.

4.      Attached as Exhibit C is a true and correct copy of Order entered on

September 21, 2009 in *Rosetta Stone Ltd. v. Google, Inc.*, Civil Action No. 1:09cv736, In the

United States District Court for the Eastern District of Virginia, which I obtained from

the PACER website, http://pacer.psc.uscourts.gov/cgi-bin/links.pl.

5.      Attached as Exhibit D is Defendant Google, Inc.'s Memorandum of Law in

Support of Motion to Dismiss Rosetta Stone's Complaint filed on August 21, 2009 in

*Rosetta Stone Ltd. v. Google, Inc.*, Civil Action No. 1:09cv736, In the United States District

Court for the Eastern District of Virginia, which I obtained from the PACER website,

http://pacer.psc.uscourts.gov/cgi-bin/links.pl.

6.      Attached as Exhibit E is a true and correct copy of excerpts of *Federal

Judicial Caseload Statistics* (Mar. 31, 2008), published by the Administrative Office of the

United States Courts.

I declare under penalty of perjury under the laws of the United States of America that
the foregoing is true and correct.

Executed this 2d day of October 2009, in Austin, Texas.

/s/ *Christopher V. Goodpastor*
Christopher V. Goodpastor

# EXHIBIT A

# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

ROSETTA STONE LTD.,

                      Plaintiff,

    -v-

GOOGLE INC.,

                      Defendant.

Civil Action No. 1:09cv736(GBL/TCB)

## DECLARATION OF KYLE M. AMBORN, ESQ.

I, Kyle M. Amborn, Esq. hereby declare:

1.  I am an Associate with Gibson, Dunn & Crutcher, LLP, counsel to plaintiff in the above-captioned matter.

2.  Appended hereto is a true and correct copy of the 2002 Google terms and conditions for advertising which was provided to us by counsel for defendant Google Inc.

3.  I declare under penalty of perjury that the foregoing is true and correct.  Executed on September 9, 2009.

Kyle M. Amborn

# TAB 1



AdWords Select™ -                                                Contact Us - Help

# Terms and Conditions for Google's AdWords Select Advertising Program

1. **Introduction.** The following sections set forth the terms and conditions ("Terms") that govern your participation in the Google's AdWords Select Advertising Program ( "AdWords Select Program"). In this Agreement, "Google" refers to Google, Inc., and "Advertiser", "you", or "your" refers to the advertiser and/or any advertising agency who submits an advertising order on behalf of an advertiser. Because these terms and conditions constitute an agreement between you and Google, please read them carefully.

2. **Agreement.** By enrolling as an Advertiser with Google using the Online Signup Form, you agree to be bound by the Terms set forth below, the Google Advertising Policy (which may be updated from time to time and which is incorporated herein by this reference) and the AdWords Select Program Frequently Asked Questions ("FAQ") referenced below (which may be updated from time to time and which is incorporated herein by this reference), and the terms and conditions of any advertising campaign that you submit or modify (collectively the "Agreement"). In the event of a conflict between these Terms, the FAQ and the Google Advertising Policy, the Terms will take precedence, then the Advertising Policy and then the FAQ. You acknowledge and represent that all information you provide for the purpose of enrolling as an Advertiser will be accurate, complete and current.

3. **Use.** Under the AdWords Select Program, you are given an opportunity to have your advertisement ("Advertisement") displayed on the search results page when a user conducts a search at www.google.com (the "Google Web Site") or a partner web site (a "Partner Site"). Through the use of keywords (including attempts to correct misspellings and singular/plural combinations for example), negative keywords, categories, and other targeting mechanisms that Google may support from time to time ("Targets"), your advertisement can be targeted so that it corresponds to particular information that a user may be seeking. In all cases, Advertisement submissions or modifications shall be made through the account maintenance page on the Google Web Site ("Account Maintenance Page"), presently located at http://adwords.google.com/select.

4. **Prohibited Uses.** You agree not to use the Google Web Site or Partner Sites for any non-personal, non-search related uses, including generating large numbers of impressions of or clicks on your Advertisement or another Advertisement nor to advertise substances, services, products or materials that are illegal or violate Google's Ad Policy, as it may be revised from time to time. Ads that link to websites with substantially similar content may not be targeted to same sets of keywords. Further you shall not submit Advertisements where you are an affiliate partner to the web site targeted in such Advertisement, and you do not provide content at such web site that is substantially reflective of the Target(s) being used through the AdWords Select Program. Violation of the above policies will have strict negative consequences. We will immediately and permanently terminate of your AdWords Select Program account. In addition, you may be subject to state and federal penalties and other legal consequences under applicable law and Google may, at its option, assist appropriate authorities in imposing such penalties or take legal action against you.

5. **Delivery of Advertisement.** For the purposes of this Agreement, "Click" means each time an Advertisement displayed on the search results page of the Google Web Site or a Partner Site is clicked on by a user to whom an Advertisement has been served. For any given display of an Advertising, the positioning, font size and other aspects of how the Advertisement is displayed on the search results page will be governed by the version of the AdWords FAQ that is current as of the date the Impression is delivered ("Then-Current AdWords FAQ"). You understand that Google may change the AdWords FAQ from time to time in its sole discretion. The AdWords FAQ is presently located at http://adwords.google.com/select/main?cmd=Doc&page=faq.html, although its location is subject to change.

6. **No Guaranteed Delivery.** Google may offer the same Target to more than one advertiser. Indeed, if there are more advertisers for a given Target than there are positions in which to display a corresponding Advertisement, you understand and acknowledge that you may not receive any Impressions for your Advertisement. In fact, you understand and acknowledge that Google makes no guarantee regarding the levels of Impressions for any Advertisement.

7. **Payment.** For any given Click, you agree to pay Google all applicable charges to your AdWords Select Program account in United States dollars (including, if any, all applicable taxes) in accordance with the terms of this Agreement and the provisions regarding payment contained in the Then-Current AdWords FAQ. However, in no event will you pay more than the budget limit you set or your Maximum cost-per-click, whichever applies. You understand that Google may change its minimum pricing from time to time, as reflected in the Then-Current AdWords FAQ. The amount of payment you owe will be determined based solely on records maintained by Google.

   You may pay Google by credit card or by an alternate payment method that is approved in advance by Google's finance department. If payment cannot be charged to your credit card or is not received by Google's finance department, for whatever reason, or if there is a charge-back for any reason, Google reserves the right to either suspend or terminate your AdWords Select Program account with Google, which will include but not be limited to, removal of your Advertisements. In the event of any failure by you to make payment, you will be responsible for all reasonable expenses (including attorneys' fees) incurred by Google in collecting such amounts.

   If you have chosen a maximum amount that you would like to spend on Advertisements, you understand and agree that if the amount charged by Google in any given month for the Clicks of your Advertisements exceeds your maximum amount, no further Clicks of your Advertisements will be delivered unless you increase your maximum amount.

   Your right to access your account with Google is subject to any limits established by Google, its contractors, or by your credit card or charge card issuer.

8. **Advertiser's Responsibilities and Rights.** You may submit your choice of Targets, or modify an existing Advertisement campaign, at the Account Maintenance Page. You are responsible for the content of each Advertisement, but Google reserves the right to review, reject, or remove any Advertisement at any time for any reason in its sole discretion. You agree to submit all Advertisements in accordance with Google's policies as set forth in the AdWords Select Program FAQ in effect at the time you submit your Advertisement. You represent and warrant that the information contained in the Advertisement itself or contained in

the Web site to which it links (collectively the "Information"), (i) does not violate any law or regulation; (ii) does not infringe in any manner any copyright, patent, trademark, trade secret or other intellectual property right of any third party; (iii) does not breach any duty toward or rights of any person or entity including, without limitation, rights of publicity or privacy, or has not otherwise resulted in any consumer fraud, product liability, tort, breach of contract, injury, damage or harm of any kind to any person or entity; (iv) is not false or misleading; (v) is neither defamatory, libelous, slanderous or threatening; and/or (vi) that, if you have not deselected the "Family Safe" designation on the Account Maintenance Page, that the Information does not contain any material that is listed in the Then-Current AdWords FAQ as not "Family Safe". You further represent and warrant that you have sufficient authority to enter into this Agreement. If Advertiser is an advertising agency, Advertiser represents and warrants that it has the authority to legally bind and act on behalf of the party whose Advertisement it is submitting to Google under this Agreement.

9. **Advertiser's Indemnification Obligation.** Advertiser's Indemnification Obligation. Advertiser agrees to indemnify, defend and hold Google and its licensors, licensees, consultants, contractors, agents, attorneys and employees harmless from and against any and all liability, loss, damages, claims or causes of action, including internal and external legal fees and expenses, arising out of, related to or which may arise from your use of the AdWords Select Program, your Web Site, and/or your breach of the terms of this Agreement, including, without limitation, the breach of any representation or warranty set forth in Section 7.

10. **Google Suggestions.** Although Google may provide you with suggestions or ideas of Targets that you may wish to use in your Advertisements, you acknowledge that you are under no obligation to use such suggestions and the ultimate decision and responsibility regarding which Targets you select for your Advertisements are yours. It is your responsibility to determine whether such suggested Targets meet your needs and that your Advertisements comply with the terms of this Agreement and applicable law. Google will not be liable for any changes made to your Targets with your knowledge. By using a Target in your Advertisement that may have been suggested by Google, you acknowledge that your Advertisement complies with Section 7 above.

11. **Advertiser Web Site.** You acknowledge that Google is not responsible for anything regarding Advertiser's Web Site(s) including, but not limited to, maintenance of such Web Site(s), order entry, payment processing, shipping, cancellations, returns, or customer service concerning orders placed on Advertiser's Web Site(s).

12. **Reporting Statistics.** You acknowledge that any statistics provided to you by Google, including, but not limited to, statistics regarding clickthrough rate, Impressions delivered, and placement of your Advertisements are the official and definitive measurements of Google's performance on any obligations under this Agreement. No other measurements or statistics (including those of Advertiser or any third party) shall be accepted by Google or have any effect on this Agreement.

13. **No Warranty from Google.** YOU EXPRESSLY AGREE THAT YOUR USE OF THE ADWORDS SELECT PROGRAM IS AT YOUR OWN RISK. THE ADWORDS SELECT PROGRAM IS AVAILABLE ON AN "AS IS" BASIS, WITHOUT WARRANTY OF ANY KIND, EXPRESS OR IMPLIED. GOOGLE EXPRESSLY DISCLAIMS ON ITS OWN BEHALF AND ON BEHALF OF ITS EMPLOYEES, AGENTS, ATTORNEYS CONSULTANTS, PARTNERS, OR CONTRACTORS ANY AND ALL WARRANTIES INCLUDING, WITHOUT LIMITATION (i) ANY WARRANTY OR REPRESENTATION WHATSOEVER REGARDING THE ADWORDS SELECT PROGRAM, THE AVAILABILITY, ACCURACY OR CONTENT OF ANY INFORMATION, SERVICES OR PRODUCTS PROVIDED OR AVAILABLE THROUGH OR IN CONNECTION WITH THE ADWORDS SELECT PROGRAM, GOOGLE AND/OR THE GOOGLE WEB SITE OR A PARTNER SITE OR ANY RESULTS OBTAINED THROUGH THE USE THEREOF, AND (ii) THE WARRANTIES OR CONDITIONS OF NONINFRINGEMENT, MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE. SOME STATES DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES, SO THE ABOVE EXCLUSION MAY NOT APPLY TO YOU. THIS LIMITED WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS, WHICH VARY FROM STATE TO STATE.

14. **Limitations Of Liability.** IN NO EVENT SHALL GOOGLE, ITS EMPLOYEES, AGENTS, ATTORNEYS CONSULTANTS, PARTNERS, OR CONTRACTORS BE LIABLE UNDER THIS AGREEMENT FOR ANY CONSEQUENTIAL, SPECIAL, LOST PROFITS, INDIRECT OR OTHER DAMAGES, INCLUDING BUT NOT LIMITED TO LOST PROFITS, LOSS OF BUSINESS, COST OF COVER WHETHER BASED IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, EVEN IF GOOGLE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY. IN ANY EVENT, GOOGLE'S, ITS EMPLOYEES, AGENTS, ATTORNEYS CONSULTANTS, PARTNERS, OR CONTRACTORS AGGREGATE LIABILITY UNDER THIS AGREEMENT FOR ANY CLAIM SHALL BE STRICTLY LIMITED TO THE AMOUNT ALREADY PAID BY YOU TO GOOGLE FOR KEYWORD ADVERTISEMENTS IN THE PRIOR SIX MONTH PERIOD. SOME STATES DO NOT ALLOW THE LIMITATION OR EXCLUSION OF LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU. Without limiting the foregoing, Google shall have no liability for any failure of, or delay with respect to, your Advertisements resulting from any governmental action, fire, flood, insurrection, earthquake, power failure, riot, explosion, embargo, strikes whether legal or illegal, labor or material shortage, transportation interruption of any kind, work slowdown, computer virus, communications line failure, Internet failure or any other condition affecting production or delivery in any manner that is beyond the control of Google. Advertiser acknowledges that Google has entered into this Agreement in reliance upon the limitations of liability set forth herein and that the same is an essential basis of the bargain between the parties.

15. **Advertiser Cancellation or Termination.** If you are dissatisfied with the AdWords Select Program or with any of the terms and conditions contained in this Agreement, your sole and exclusive remedy is to terminate your AdWords Select Program account. You may cancel any Advertisement or your participation in the AdWords Select Program at any time for any reason by accessing your account on the Google Site. If you cancel an Advertisement, such Advertisement will be discontinued within 24 hours of Google's receipt of such notice; and if you terminate your AdWords Select Program account, your account will be deemed terminated when Google receives such notice.

16. **Google Cancellation or Termination.** Notwithstanding anything contained in this Agreement to the contrary, Google may, in its sole discretion, terminate or discontinue the AdWords Select Program at any time, terminate your AdWords Select Program account, discontinue your participation in the AdWords Select Program, cancel your Advertisements, or cancel your use of any Target. Google may exercise its discretion to so terminate, discontinue, or cancel, as provided for above, for any reason including, but not limited to, if Google believes that you violated the terms of this Agreement or if Google believes your conduct is harmful to Google or others. You acknowledge and agree that all decisions made by Google in this matter will be final and Google shall have no liability with respect to such decisions. Google will notify you of cancellation of any of your Advertisements or of termination of your AdWords Select Program account via email and any such cancellation or termination shall be effective on the date Google sends such notice.

17. **Effect of Cancellation or Termination.** In the event of any termination or cancellation by either Advertiser or Google under Sections 13 or 14, Advertiser shall remain liable for any amount due to Google for any Impressions of Advertisements delivered by Google before the date of such termination or cancellation, and such obligation to pay shall survive any termination of this

Agreement.

18. **Information Rights.** Google shall have the right to retain and use for its own purposes all information that you provide under the AdWords Select Program, including but not limited to keywords selected, URLs selected, the content of advertisements submitted, contact information, billing information, etc. In addition, Google may share aggregate (not personally identifiable) information about you with advertisers, business partners, sponsors, and other third parties. For example, we may disclose how frequently an average advertiser renews their AdWords Select Program account. Google will not, however, disclose any of your personally identifiable information to third parties.

19. **Notices.** Unless otherwise set forth in this Agreement, Google may give general notices to you by posting on the Google Web Site and, where possible, by electronic mail to your email address.

20. **Choice of Law and Venue.** This Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to principles of conflicts of law. You agree that the exclusive venue for any disputes arising under this Agreement shall be the state and federal courts located in Santa Clara County, California.

21. **Entire Agreement; Severability.** Severability. This Agreement contains the entire agreement of the parties regarding the subject matter of this Agreement and supersedes all previous communications, representations, understandings and agreements, either oral or written, between you and Google. Google may modify the terms of this Agreement at any time upon notice published on Google's Web Site. Any use of the AdWords Select Program after such notice shall be deemed to be continued acceptance of this Agreement including its amendments and modifications. If any provision of this Agreement is deemed unenforceable or invalid, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and remain enforceable.

---

©2008 Google - <u>AdWords Select Home</u> - <u>Terms and Conditions</u> - <u>Contact Us</u>

# EXHIBIT B

```
 1                  IN THE UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF TEXAS
 2                       CORPUS CHRISTI DIVISION


 3

   FLOWBEE INTERNATIONAL, INC.,     *     CIVIL ACTION
 4 AND FLOWBEE HAIRCUTTER LIMITED    *
   PARTNERSHIP,                      *     CA-C-09-199
 5                                   *
                PLAINTIFFS,          *
 6                                   *
   VS.                               *
 7                                   *     CORPUS CHRISTI, TEXAS
   GOOGLE, INC.,                     *     SEPTEMBER 23, 2009
 8                                   *     1:08 P.M.
                DEFENDANT.           *
 9 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

10

11            TRANSCRIPT OF INITIAL PRETRIAL CONFERENCE

12          BEFORE THE HONORABLE JANIS GRAHAM JACK
                   UNITED STATES DISTRICT JUDGE

13

14 APPEARANCES:

15 FOR THE PLAINTIFFS:        MR. DAVID TARRANT BRIGHT
                              WATTS, GUERRA & CRAFT, L.L.P.
16                            555 NORTH CARANCAHUA, SUITE 1400
                              CORPUS CHRISTI, TEXAS 78478
17
   FOR THE DEFENDANT:         MS. MARGARET CARUSO
18                            QUINN, EMANUEL, URQUHART, OLIVER &
                              HEDGES, L.L.P.
19                            555 TWIN DOLPHIN DRIVE, SUITE 560
                              REDWOOD SHORES, CALIFORNIA 94065
20
                   (APPEARANCES CONTINUED ON PAGE 2)
21

22 COURT RECORDER:           MS. VELMA GANO

23
            PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING
24          TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE:
                 MOLLY CARTER, P. O. BOX 270203
25          CORPUS CHRISTI, TEXAS 78427 (361) 945-2525
```

1    APPEARANCES:   (CONTINUED)

2

3    FOR THE DEFENDANT:          MR. CARL C. BUTZER
                                 JACKSON WALKER, L.L.P.
                                 901 MAIN STREET, SUITE 6000
4                                DALLAS, TEXAS 75202

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  is whether this arises out of the contract or just a plain old

2  trademark infringement, if that's what they're going on.

3          MS. CARUSO:  I believe -- would you like --

4          THE COURT:  Mr. Bright?

5          MR. BRIGHT:  Your Honor, our deadline for responding

6  has not expired, and we will be vigorously contesting it.  Our

7  position --

8          THE COURT:  I know, but I do all pending motions at

9  the initial pretrial conference.

10          MR. BRIGHT:  We intend to file a full-blown response.

11  This motion was just filed a week ago.  Let me first say, it's

12  going to be our position, and I think it's going to be born out

13  by the facts, that this suit does not arise out of that

14  contract.  The contract's not mentioned in the suit.  The

15  conduct complained of by Google predates this click-through

16  contract.  There may be conflicting terms in various click-

17  through contracts.

18          THE COURT:  But you're not relying on the contract

19  for this.  You're relying on trademark infringement.

20          MR. BRIGHT:  That is absolutely correct, Your Honor.

21          THE COURT:  That's what I thought, reading through

22  your petition.  So I'm not sure if the forum selection clause

23  in the contract controls.  But I'll give you a chance to

24  respond to his response.

25          MS. CARUSO:  Okay.  Your Honor, I, Google agrees that

1    their complaint is based on trademark infringement.  It does

2    not arise out of the contract.  However, the forum selection

3    clause is broader than the scope of the contract alone.  It

4    goes beyond just the parties' relationship under the contract,

5    if you look at the words, to all claims arising from or

6    relating to the agreement and --

7              THE COURT:  Okay.  I can -- let me say this.

8              MS. CARUSO:  Sure.

9              THE COURT:  I can Google my name on Google.

10             MS. CARUSO:  Yes.

11             THE COURT:  And come up with lots of stuff.  And if I

12   found that you were putting my name with someone else, I would

13   have some kind of a cause of action.  It might be some kind of

14   slander cause of action.  And that forum selection clause would

15   not apply to me, because I didn't have a contract with you.

16             MS. CARUSO:  But if --

17             THE COURT:  So tell me the difference.

18             MS. CARUSO:  The difference is that Flowbee, the

19   Plaintiff, does have a contract with us, an advertising

20   contract.  And as one of the terms of that contract, they

21   agreed that any dispute relating to Google's advertising

22   programs would be brought in California, in the courts of Santa

23   Clara County.  And there is a case, from the Northern District

24   of Texas --

25             THE COURT:  You're going to rely on the law for this?

1          MS. CARUSO:  -- "sponsored link," as a way to call

2    out to consumers that this is not natural results.

3          THE COURT:  Okay.

4          MS. CARUSO:  That it's something else.  Thank you.

5          THE COURT:  I think I can see why Google hired you.

6    Thank you.  That's it?

7          MR. BRIGHT:  I believe so, Your Honor.

8          THE COURT:  All right.  Thank you all very much.

9          MS. CARUSO:  Thank you.

10         MR. BRIGHT:  Thank you, Your Honor.

11         THE COURT:  You're excused.

12         MR. BRIGHT:  Thank you.

13      (Proceedings concluded at 1:44 p.m.)

14

15

16

17

18   I, court approved transcriber, certify that the foregoing is a
     correct transcript from the official electronic sound recording
19   of the proceedings in the above-entitled matter.

20

21

22
     /s/ Molly Carter_____          September 25, 2009_____
23   Molly Carter                      Date

24

25

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Rosetta Stone Ltd.,           )
                              )
         Plaintiff,           )
                              )
         v.                   )     Case No. 1:09cv736(GBL)
                              )
Google Inc.,                  )
                              )
         Defendant.           )

### ORDER

THIS MATTER is before the Court on Defendant Google's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) or alternatively, pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated in open court on Friday, September 18, 2009, it is hereby

ORDERED that Defendant's Motion to Dismiss is DENIED in part and GRANTED in part.  The Court DENIES the Rule 12(b)(3) Motion to Dismiss for improper venue.  It is further

ORDERED that the Court GRANTS the Rule 12(b)(6) Motion to Dismiss the false endorsement and conspiracy claims.

The Clerk is directed to forward a copy of this Order to counsel.

Entered this *2/o* day of September, 2009.

Alexandria, Virginia

09/ *2/* /09

/s/
Gerald Bruce Lee
United States District Judge

.

2

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

ROSETTA STONE LTD.,

      Plaintiff,

v.

GOOGLE INC.,

      Defendant.

CIVIL ACTION NO. 1:09cv736
(GBL / TCB)

**DEFENDANT GOOGLE INC.'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS ROSETTA STONE'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

RELEVANT FACTUAL BACKGROUND.............................................................................2

    The Parties' Exclusive Forum Selection Agreement............................................................2

    Rosetta Stone's Allegations Concerning Its Marks and the Operation of the
        AdWords Program ...................................................................................................3

ARGUMENT .........................................................................................................................4

I.     THE PARTIES' EXCLUSIVE VENUE AGREEMENT REQUIRES
       DISMISSAL OF ROSETTA STONE'S COMPLAINT .......................................................4

    A.    The Parties' Mandatory Forum Selection Clause Applies To Rosetta
        Stone's Claims. ...................................................................................................4

    B.    The Parties' Forum Selection Clause Is Presumptively Valid And Should
        Be Enforced. ........................................................................................................6

II.    COUNTS IV AND VIII SHOULD BE DISMISSED .......................................................8

    A.    The Fourth Cause Of Action For "False Representation Under The
        Lanham Act" Fails As A Matter Of Law.................................................................8

        1.    *Rosetta Stone Failed To Allege That Google Misrepresents the
            Origin Of Its Own Goods Or Services.* ........................................................9

        2.    *Rosetta Stone Cannot Maintain A Cause of Action For False
            Advertising Because The Parties Are Not Competitors.* ...........................10

    B.    The Eighth Cause of Action Is Barred By The Communications Decency
        Act.....................................................................................................................10

CONCLUSION.......................................................................................................................14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allen v. Lloyd's of London*
94 F.3d 923 (4th Cir. 1996) ...................................................................................6

*Baker v. Adidas America, Inc.*
No. 08-1385, 2009 WL 1863691 (4th Cir. June 30, 2009) ....................................7

*Benton v. England*
222 F. Supp. 2d 728 (D. Md. 2002) .......................................................................8

*Berry v. Soul Circus, Inc.*
189 F. Supp. 2d 290 (D. Md. 2002) .......................................................................5

*Beyond Systems, Inc. v. Keynetics, Inc.*
422 F. Supp. 2d 523 (D.Md. 2006) ......................................................................13

*Carafano v. Metrosplash.com, Inc.*
339 F.3d 1119 (9th Cir. 2003) .......................................................................11, 14

*Carnival Cruise Lines, Inc. v. Shute*
499 U.S. 585 (1991) ...............................................................................................7

*Cfirstclass Corp. v. Silverjet PLC*
560 F. Supp. 2d 324 (S.D.N.Y. 2008) ...................................................................5

*CoStar Realty Information, Inc. v. Field*
612 F. Supp. 2d 660 (D. Md. 2009) .......................................................................6

*Commerce Consultants Intern., Inc. v. Vetrerie Riunite, S.p.A.*
867 F.2d 697 (D.C. Cir. 1989) ...............................................................................6

*Corbis Corp. v. Amazon.com, Inc.*
351 F. Supp. 2d 1090 (W.D. Wash. 2004) ..........................................................13

*Dastar Corp. v. Twentieth Century Fox Film Corp.*
539 U.S. 23, 28 (2003) ...........................................................................................9

*Facenda v. N.F.L. Films, Inc.*
542 F.3d 1007 (3d Cir. 2008) .................................................................................9

*Feldman v. Google Inc.*
513 F. Supp. 2d 229 (E.D. Pa. 2007) .....................................................................7

*Forrest v. Verizon Comm'ns, Inc.*
805 A.2d 1007 (D.C. 2002) ....................................................................................7

*Garrett v. Gulf Stream Coach, Inc.*
No. 3:08cv792, 2009 WL 936297 (E.D. Va. Apr. 7, 2009) ...................................5

*Gita Sports Ltd. v. SG Sensortechnik Gmbh & Co. KG.*
  560 F. Supp. 2d 432 (W.D.N.C. 2008) ...................................................................7

*Goddard v. Google, Inc.*
  No. C 08-2738, 2009 WL 2365866 (N.D. Cal. July 30, 2009)..........................12, 14

*Johnson v. Ford Motor Co.*
  No. Civ.A. 2:04-1311, 2005 WL 2353469 (S.D.W. Va. Sept. 26, 2005) ..................6

*Langdon v. Google, Inc.*
  474 F. Supp. 2d 622 (D. Del. 2007) ..................................................................12

*M/S Bremen v. Zapata Off-Shore Co.*
  407 U.S. 1 (1972) ...........................................................................................4

*Made in the USA Foundation v. Phillips Foods, Inc.*
  365 F.3d 278 (4th Cir. 2004) ..........................................................................10

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*
  564 F. Supp. 2d 544 (E.D. Va. 2008) ..........................................................10, 12

*Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*
  496 F.3d 1231 (11th Cir. 2007) ........................................................................9

*Parker v. Google Inc.*
  422 F. Supp. 2d 492 (E.D. Pa. 2006) ................................................................12

*Parker v. Google Inc.*
  242 Fed. Appx. 833 (3d Cir. 2007).............................................................12, 14

*Pee Dee Health Care, P.A. v. Sanford*
  509 F.3d 204 (4th Cir. 2007) ............................................................................8

*Southeast Coastal Development Fund, L.L.C. v. Commercial Real Estate Inc.*
  No. 5:08-CV-15-F, 2009 WL 928543 (E.D.N.C. Apr. 3, 2009)................................5

*Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*
  471 F.3d 544 (4th Cir. 2006) .......................................................................4, 5

*Universal Communication Systems, Inc.*
  478 F.3d at 419 ......................................................................................12, 14

*Varsity Gold, Inc. v. Cron*
  No. 5:08-CV-81, 2008 WL 4831418 (E.D.N.C. Nov. 5, 2008)................................5

*Varsity Gold, Inc. v. Lunenfeld*
  No. CCB-08-550, 2008 WL 5243517 (D.Md. Dec. 12, 2008) ...........................4, 5

*Western Refining Yorktown, Inc. v. BP Corp. North America Inc.*
  618 F. Supp. 2d 513 (E.D. Va. 2009) ................................................................5

*Zeran v. America Online, Inc.*
  129 F.3d 327 (4th Cir. 1997) .....................................................................11, 13

## Statutes

15 U.S.C. § 1125(a) ...................................................................................8, 9, 10

47 U.S.C. § 230.............................................................2, 10, 11, 12, 13, 15

Virginia Code Section 18.2-499 ...............................................................10

## Rules

Federal Rule of Civil Procedure Rule 12(b)(3).............................................1, 4, 5, 8, 14

Federal Rule of Civil Procedure Rule 12(b)(6).......................................1, 5, 8

Defendant Google Inc. ("Google") hereby respectfully moves this Court to dismiss the Complaint of Plaintiff Rosetta Stone Ltd. ("Rosetta Stone") pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, or alternatively, if Google's Rule 12(b)(3) motion is denied, to dismiss the Fourth and Eighth Causes of Action pursuant to Rule 12(b)(6).

## **INTRODUCTION**

The threshold issue before the Court is whether this action belongs here. It does not. Pursuant to the Parties' contractual agreement, all claims relating to Google's advertising programs must be litigated exclusively in courts located in Santa Clara County, California. Because Rosetta Stone's entire Complaint is predicated on allegations concerning Google's advertising programs, this action should be dismissed. If Rosetta Stone wishes to re-file, it must do so in a court in Santa Clara County, where it contractually agreed to litigate such claims.

Because dismissal is appropriate under the Parties' exclusive forum selection agreement, the Court need not address the substantive deficiencies of Rosetta Stone's Complaint. If, however, the Court finds that Rosetta Stone satisfies its heavy burden of demonstrating why the forum selection clauses to which it voluntarily agreed should not be enforced, Counts IV and VIII should be dismissed for failing to state claims upon which relief can be granted.

The Fourth Cause of Action, for "false representation under the Lanham Act," appears to rely on theories of false designation of origin "and/or" false advertising. It fails under both. Rosetta Stone's purported claim for false designation of origin is premised on alleged confusion as to approval, endorsement, sponsorship, affiliation, or support by Rosetta Stone of third parties and their goods or services. However, the Lanham Act does not impose liability for a defendant causing confusion between a plaintiff and a third party. Because Rosetta Stone has not pled that Google misleads consumers as to *Google*'s affiliation, connection, or association with, or sponsorship or approval by, Rosetta Stone, Rosetta Stone's allegations fail to state a claim for

1

false designation of origin under the Lanham Act. Further, Rosetta Stone does not have standing to bring a false advertising claim against Google because they are not business competitors. In addition, the Eighth Cause of Action, for business conspiracy, fails because the Communications Decency Act of 1996, 47 U.S.C. § 230, protects providers of interactive computer services, like Google, from liability from claims predicated upon publication of content created by a third party.

These pleading deficiencies cannot be overcome by amendment. Rosetta Stone cannot allege in good faith that Google is its competitor. Nor can it allege likely confusion as to the affiliation, connection, or association of Google with Rosetta Stone. Rosetta Stone also cannot allege in good faith that Google created the contents of third-party advertisements or that the Communication Decency Act otherwise does not bar this cause of action. Accordingly, even if Google's Rule 12(b)(3) motion is denied, Counts IV and VIII should be dismissed with prejudice.

## RELEVANT FACTUAL BACKGROUND

### The Parties' Exclusive Forum Selection Agreement

Rosetta Stone participates in Google's AdWords advertising program to display targeted "Sponsored Links" on Google's website. Complaint, ¶¶ 52, 67. As a necessary condition of participating in the AdWords program, Rosetta Stone agreed to certain terms and conditions (the "AdWords Contract") by clicking "yes" in an interactive window. (Ex. 1, Declaration of Christine Aguiar dated August 21, 2009, submitted herewith, ¶¶ 4-11, Ex. A).

The AdWords Contract contains a clear and conspicuous exclusive forum selection and choice-of-law clause, which provides in relevant part:

> 9    **Miscellaneou**s. *THE AGREEMENT MUST BE CONSTRUED AS IF BOTH PARTIES JOINTLY WROTE IT AND GOVERNED BY CALIFORNIA LAW EXCEPT FOR ITS CONFLICTS OF LAWS PRINCIPLES.* **ALL CLAIMS**

2

> ***ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE
> GOOGLE PROGRAM(S) SHALL BE LITIGATED EXCLUSIVELY IN THE
> FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY,
> CALIFORNIA, USA****, AND GOOGLE AND CUSTOMER CONSENT TO
> PERSONAL JURISDICTION IN THOSE COURTS.***

(Aguiar Decl., ¶ 10, Ex. A, ¶ 9 (underlining and bold added).)  As used in the AdWords

Contract, the "Google Program(s)" means any of Google's advertising programs.  *Id*.  Nothing in

the AdWords Contract limits application of the exclusive venue clause to claims arising from or

relating to Rosetta Stone's participation in the AdWords program.  (Aguiar Decl., ¶ 10, Ex. A.)

**Rosetta Stone's Allegations Concerning Its Marks and the Operation of the AdWords
Program**

Google is an Internet company based in Mountain View, California.  Complaint, ¶¶ 8, 25.

In response to a user query, Google's Internet search engine displays listings of websites

generated from a database of websites using an algorithm.  *Id.* ¶¶ 4, 25.  Rosetta Stone refers to

such search results as "natural" or "organic" search results.  *Id.*  ¶¶ 4, 26.  Google's search result

pages may also display advertisements labeled "Sponsored Links," above or to the right of

organic search results.  *Id.* ¶¶ 5, 29, 36.  The Sponsored Link advertisements are created by third-

party advertisers, who offer to pay for the opportunity to have their advertisements displayed

when a user enters certain words or phrases ("keywords") in Google's search engine.  *Id.* ¶¶ 29,

37.

Rosetta Stone alleges that it owns numerous trademarks in connection with its

"technology-based language-learning products and services."  Complaint, ¶ 14.  These include

"Rosetta Stone," as well as phrases such as "Global Traveler," "Language Library," "Dynamic

Immersion," and "Audio Companion."  *Id*. ¶ 16.  Rosetta Stone alleges that third parties

participating in Google's AdWords program have paid to use these phrases, "as well as words,

phrases, and terms confusingly similar to [them]" as keywords, such that their advertisements are

displayed as "Sponsored Links" in response to user queries that contain such keywords. *Id.* ¶ 51. Rosetta Stone asserts that these actions harm it, and, in the case of one advertiser, constitute a conspiracy to "willfully and maliciously injure[]" its business. *Id.* ¶¶ 131, 132. In addition to damages, Rosetta Stone seeks broad injunctive relief, including permanently enjoining Google from "making any use of the Rosetta Stone Marks,"—which include such phrases such as "Global Traveler," "Audio Companion," in addition to "Rosetta Stone"— "and/or terms confusingly similar thereto unless specifically authorized by Rosetta Stone." *Id.* p. 35.

## ARGUMENT

## I.     THE PARTIES' EXCLUSIVE VENUE AGREEMENT REQUIRES DISMISSAL OF ROSETTA STONE'S COMPLAINT

Where a valid forum selection clause designates another court as the exclusive venue for litigation, dismissal of the action under Federal Rule of Civil Procedure 12(b)(3) is proper. *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006). "It is now well established that federal law presumes mandatory forum selection clauses to be *prima facie* enforceable for claims within their scope . . . ." *Varsity Gold, Inc. v. Lunenfeld*, No. CCB-08-550, 2008 WL 5243517 at \*2 (D.Md. Dec. 12, 2008) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) and others). Plaintiffs have a "heavy burden" in demonstrating why courts should not enforce forum selection clauses to which they voluntarily agreed. *M/S Bremen*, 407 U.S. at 17. Because the venue provision in the Parties' AdWords Contract is mandatory, Rosetta Stone's Complaint is within the scope of the venue clause, and Rosetta Stone cannot carry its heavy burden of proving unenforceability, the Complaint should be dismissed.

### A.     The Parties' Mandatory Forum Selection Clause Applies To Rosetta Stone's Claims.

The forum selection clause at issue states "ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE GOOGLE PROGRAM(S) SHALL BE

4

LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA

COUNTY, CALIFORNIA." (Aguiar Decl. ¶ 10, Ex. A.)[1]  The "exclusive" language makes the

clause mandatory, not optional, in determining the appropriate venue.  *See, e.g., Garrett v. Gulf*

*Stream Coach, Inc.*, No. 3:08cv792, 2009 WL 936297, at *3 (E.D. Va. Apr. 7, 2009) (holding

that a forum selection clause stating "[e]xclusive jurisdiction" for claims "shall be in the courts

in the State of Manufacture" to be mandatory and thus enforceable).

Further, the venue clause here is extremely broad.  Unlike narrow clauses limited to

claims "arising from" a breach of the parties' contract, the clause here goes further to encompass

"ALL CLAIMS ... RELATING TO ...  GOOGLE PROGRAM(S)."  Such provisions are

routinely enforced against claims other than for breach of contract.  *See, e.g., Southeast Coastal*

*Development Fund, L.L.C. v. Commercial Real Estate Inc.*, No. 5:08-CV-15-F, 2009 WL

928543, at *11 (E.D.N.C. Apr. 3, 2009); *Varsity Gold*, 2008 WL 5243517 at *3, n.5 (collecting

cases); *Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008); *Berry v.*

*Soul Circus, Inc.*, 189 F. Supp. 2d 290, 294 (D. Md. 2002); *Varsity Gold, Inc. v. Cron*, No. 5:08-

CV-81, 2008 WL 4831418, at **1-2 (E.D.N.C. Nov. 5, 2008).

The AdWord Contract's exclusive venue selection provision covers all claims "relating to

. . . the Google Programs(s)," which it defines as "Google's advertising program(s)." (Aguiar

Decl., ¶ 10, Ex. A).  Rosetta Stone's Complaint is undeniably related to Google's advertising

programs.  Every action Rosetta Stone complains about occurs in connection with Google's

advertising programs.  Indeed, the Complaint expressly references Google's "advertising

program(s)," the "AdWords program," and the "Sponsored Links" that are displayed through the

---

[1]  "When ruling on a 12(b)(3) motion, 'the pleadings are not accepted as true, as would
be required under a Rule 12(b)(6) analysis,' and the court can therefore consider evidence
outside the pleadings."  *Western Refining Yorktown, Inc. v. BP Corp. North America Inc.*, 618 F.
Supp. 2d 513, 516 (E.D. Va. 2009) (quoting *Sucampo*, 471 F.3d at 549-50).

5

AdWords program no fewer than 80 times.  Complaint, ¶¶ 5, 28, 30, 36-39, 41, 44-45, 49-52, 54-57, 59-61, 63-65, 72-75, 81-83, 85, 91-93, 95, 101-102, 110-111, 113, 132, p. 11, 35.

Accordingly, Rosetta Stone's Complaint is within the scope of the Parties' mandatory venue agreement.

### B.     The Parties' Forum Selection Clause Is Presumptively Valid And Should Be Enforced.

To overcome the high bar of the presumption of validity, a plaintiff must clearly show (1) the forum selection clause was "induced by fraud or overreaching;" (2) litigation in the forum will be so inconvenient as to deprive plaintiff of its day in court; (3) the chosen law is fundamentally unfair and will deprive the plaintiff of a remedy; or (4) enforcement of the clause would "contravene a strong public policy of the forum state."  *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (citations omitted).  Rosetta Stone cannot meet any of these tests.

Rosetta Stone cannot show that the forum selection clause was entered into by fraud or overreaching.  Rosetta Stone, a sophisticated company that describes itself as "the foremost language-education company in the United States," has extensive experience with technology and the Internet.  Complaint, ¶¶ 1, 14.  *See*, *e.g.*, *Commerce Consultants Intern., Inc. v. Vetrerie Riunite, S.p.A.*, 867 F.2d 697, 699-700 (D.C. Cir. 1989) (considering sophistication of the parties in enforcing a forum selection clause).  Further, Rosetta Stone cannot argue that the forum selection clause is invalid because it did not have an opportunity to negotiate its terms.  *See Johnson v. Ford Motor Co.*, No. Civ.A. 2:04-1311, 2005 WL 2353469, *2 (S.D.W. Va. Sept. 26, 2005) (granting motion to transfer because, in part, a forum selection clause in an adhesion contract was not *per se* unenforceable).  Indeed, courts consistently enforce similar forum selection clauses entered into as part of "clickwrap" agreements such as the AdWords Contract. *See, e.g., CoStar Realty Information, Inc. v. Field*, 612 F. Supp. 2d 660, 669-70 (D. Md. 2009)

(enforcing a forum selection clause found in a click through online user agreement); *Feldman v. Google Inc.*, 513 F. Supp. 2d 229, 236-38 (E.D. Pa. 2007) (finding Google's AdWords Contract gave reasonable notice of the terms of the agreement, user had ample time to review the terms, and the user indicated his assent to the terms by clicking the box on Google's website); *Forrest v. Verizon Comm'ns, Inc.*, 805 A.2d 1007, 1010-1011 (D.C. 2002) (enforcing a forum-selection clause contained in an online User Agreement because "[a] contract is no less a contract simply because it is entered into via a computer.").

Rosetta Stone cannot meet its substantial burden of proving that litigating in the contractually-selected forum would be so inconvenient as to deprive it of its day in court. *See, e.g., Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 596-597 (1991) (upholding validity of forum selection clause in a form contract that required an elderly Washington State resident injured in Panama to litigate in Florida, where she had no contact). Moreover, Rosetta Stone could have forseen any inconvenience when it agreed to a contract with a mandatory venue provision. *E.g., Baker v. Adidas America, Inc.*, No. 08-1385, 2009 WL 1863691, at *4 (4th Cir. June 30, 2009) (enforcing a forum selection clause requiring college student to litigate claims in Amsterdam because burdens of litigation were foreseeable at the time the contract was signed).

Application of California law, as specified in the AdWords contract, is not fundamentally unfair. Five of Rosetta Stone's causes of action are based on federal trademark law, with the same remedies available regardless of the venue. Even if Rosetta Stone's remaining three causes of action under Virginia law do not each have exact California analogues, so long as Plaintiff has *a* remedy under California law, enforcement of the clause is not fundamentally unfair. *Gita Sports Ltd. v. SG Sensortechnik Gmbh & Co. KG.*, 560 F. Supp. 2d 432, 440 (W.D.N.C. 2008) ("German law is certainly different from North Carolina law, but that does not mean that

Plaintiff will be deprived of " a remedy," even if it is not the same remedy that North Carolina law would afford.") (citation omitted).

Enforcement of the forum selection clause in this case does not contravene any strong public policy of the Commonwealth of Virginia. Ordering a plaintiff to pursue claims in a court other than plaintiff's preferred forum does not violate public policy. *E.g., Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 214 (4th Cir. 2007) (enforcing forum selection clause requiring Medicaid payment disputes be brought in state court did not contravene public policy despite forcing plaintiffs to seek federal remedy for Medicaid reimbursement in state court).

Because Rosetta Stone cannot satisfy its heavy burden of proving that the venue clause should not be enforced, its complaint should be dismissed.

## II.    <u>COUNTS IV AND VIII SHOULD BE DISMISSED</u>

The Court need not address the legal sufficiency of Rosetta Stone's claims if it dismisses the action. *See*, *e.g*., *Benton v. England*, 222 F. Supp. 2d 728, 730 (D. Md. 2002) ("Before delving into the more substantive examinations regarding the success of Plaintiff's attempt to state a claim . . . , it makes sense to determine first whether Plaintiff's case is even properly before this court."). Even if the Court does not dismiss the entire Complaint under Rule 12(b)(3), it should dismiss Counts IV and VIII under Rule 12(b)(6).

### A.    **The Fourth Cause Of Action For "False Representation Under The Lanham Act" Fails As A Matter Of Law.**

Rosetta Stone apparently intends its "false representation" claim to encompass every possible theory under 15 U.S.C. § 1125(a). *See* Complaint ¶ 103 ("These misleading uses of the Rosetta Stone Marks constitute a false designation of origin and/or misleading description of fact and/or a false or misleading representation of fact . . . ."). However, no viable theory of liability fits the facts pled.

8

1.      *Rosetta Stone Failed To Allege That Google Misrepresents the Origin Of Its Own Goods Or Services.*

The Lanham Act's prohibition on false designation of origin applies only to confusion of affiliation, connection, or association between the plaintiff and the defendant's goods or services. 15 U.S.C. § 1125(a)(1)(A).  As one court explained, "section 43(a)'s language—which prohibits a 'false designation of origin'—has been construed by the courts as creating a federal action for 'passing off,' which occurs 'when a producer misrepresents *his own* goods or services as someone else's.'"  *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc*., 496 F.3d 1231, 1248 (11th Cir. 2007) (emphasis added) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23, 28 n.1 (2003)).  Thus, to state a claim for false designation of origin, Rosetta Stone must allege that Google has used a word, term or trademark that:

> is likely to cause confusion . . . as to the affiliation, connection, or association of such person [the one alleged to have used a false designation of origin—i.e., the defendant] with another person [i.e., the plaintiff] or as to the origin, sponsorship, or approval of his or her [i.e., the defendant's] goods, services, or commercial activities by another person [i.e., the plaintiff].

15 U.S.C. § 1125(a)(1)(A).  Rosetta Stone does not make such an allegation.

It is well settled that the Lanham Act's reference to "another person" in this section means the plaintiff.  *See, e.g., Facenda v. N.F.L. Films, Inc*., 542 F.3d 1007, 1014 (3d Cir. 2008) (the plaintiff must show that "the defendant's use of the mark to identify *its* goods or services is likely to create confusion concerning the plaintiff's sponsorship or approval of those goods or services") (emphasis added).  Thus, to state a claim, Rosetta Stone must allege consumer confusion between it and Google—not it and a third party.

Rosetta Stone has not alleged that Google confuses consumers as to its affiliation, connection or association with Rosetta Stone, or as to Rosetta Stone's sponsorship or approval of Google's search engine.  Instead, Rosetta Stone alleges that the operation of Google's

9

advertising program "conveys the false or misleading commercial impression to the public that *the third party advertisers . . .* or *their* products or services, are approved, endorsed or sponsored by Rosetta Stone, or are otherwise affiliated with or supported by Rosetta Stone."   Complaint, ¶ 101 (emphasis added).   Without any allegation that Google is misrepresenting its own goods or services as those of Rosetta Stone, the false designation of origin count necessarily fails.

### 2. *Rosetta Stone Cannot Maintain A Cause of Action For False Advertising Because The Parties Are Not Competitors.*

Rosetta Stone's false advertising theory also fails.  To establish standing under the false advertising prong of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), a plaintiff must allege a competitive injury, i.e., one that harms the plaintiff's ability to compete with the defendant.  *See Made in the USA Foundation v. Phillips Foods, Inc.*, 365 F.3d 278, 278-79 (4th Cir. 2004) (a consumer group did not have standing to sue for false advertising under § 1125(a)(1)(B) without proof of a competitive injury); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 564 F. Supp. 2d 544, 553 (E.D. Va. 2008) (dismissing a false advertising claim by a car dealership against a website because the plaintiff was "not in competition with Defendant and the[] alleged injury is not of the sort that the Lanham Act sought to prevent.").  Absent such an allegation, the Court should dismiss the claim.  Here, it is beyond dispute that Google does not compete with Rosetta Stone.  Rosetta Stone sells materials in connection with learning foreign languages.  Complaint, ¶ 1.  Google is an Internet search company.  *Id.* ¶ 3.  Because the Parties are in entirely different lines of business, Rosetta Stone's claim for false advertising fails.

### B. The Eighth Cause of Action Is Barred By The Communications Decency Act.

The Communications Decency Act of 1996 ("CDA") bars Count VIII's purported claim for violation of Virginia Code Section 18.2-499, which prohibits conspiracies to injure another party's business or reputation.  Rosetta Stone alleges that Google committed this tort by entering

10

into an agreement with Rocket Languages Ltd., a competitor of Rosetta Stone, "pursuant to which Google would display 'Sponsored Links' for Rocket Languages in response to searches for the Rosetta Stone Marks. . . with the intent to injure maliciously Rosetta Stone."  Complaint, ¶¶ 132, 134.  In other words, Rosetta Stone seeks to hold Google liable for business conspiracy by virtue of advertising Google displays that is created by a third party in connection with its participation in Google's AdWords program.

The goal of the CDA is to "promote the continued development of the Internet and other interactive computer services."  47 U.S.C. § 230(b)(1).  To facilitate this goal, the CDA provides complete immunity to each "provider or user of an interactive computer service" from liability premised on "information provided by another information content provider," except for intellectual property claims.  47 U.S.C. §§ 230(c)(1), (e)(2).  As the Fourth Circuit explained, "[b]y its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."  *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).

Given the CDA's goal of promoting the development of interactive computer services, "reviewing courts have treated § 230(c) immunity as quite robust, adopting a relatively expansive definition of 'interactive computer service.'"  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003).  As the Fourth Circuit explained:

> Congress made a policy choice ... not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages. . . . Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted.  Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.

*Zeran*, 129 F.3d at 1123-24.

Google plainly satisfies the CDA's definition of an "interactive computer service" as an "information service . . . that provides or enables computer access by multiple users . . . ." 47 U.S.C. § 230(f)(2). It is undisputed that Google, a global Internet search engine, "enables computer access by multiple users to a computer server." *Universal Communication Systems, Inc.,* 478 F.3d at 419 ("A web site . . . 'enables computer access by multiple users to a computer server,' namely, the server that hosts the web site. Therefore, web site operators . . . are providers of interactive computer services within the meaning of Section 230."); *Nemet Chevrolet,* 564 F. Supp. 2d at 548 (noting defendants were "indisputably" an interactive service provider because they operated the website in question).

Consistent with application of the CDA's plain language, other courts have held that Google is an interactive computer service within the meaning of the CDA. *See*, *e.g*., *Goddard v. Google, Inc*., No. C 08-2738, 2009 WL 2365866 at *8 (N.D. Cal. July 30, 2009) (dismissing claims against Google under the CDA); *Langdon v. Google, Inc*., 474 F. Supp. 2d 622, 631 (D. Del. 2007) (dismissing claims against Google and other interactive computer service providers under the CDA); *Parker v. Google Inc.*, 422 F.Supp.2d 492, 501 (E.D. Pa. 2006) ("[T]here is no doubt that Google qualifies as an 'interactive computer service.'"), *aff'd*, 242 Fed. Appx. 833 (3d Cir. 2007).

Further, Google is not an "information content provider" exempt from the CDA's broad immunity for "interactive service providers." The CDA defines "internet content provider" as any person responsible for the creation or development of information provided through an interactive computer service. 47 U.S.C. § 230(f)(3). Rosetta Stone does not allege that Google is the creator of the content of the advertisements that Rosetta Stone alleges caused it harm. *But cf.* Complaint, ¶ 57 (alleging that "Google actively participates in the creation of 'Sponsored

12

Links' . . . ," but not identifying any content in the body of the advertisements created by Google). Rather, Rosetta Stone alleges in Count VIII that Google "display[s]" the advertising in question. *Id*. ¶ 132; *accord id.* ¶ 30. In contrast to Google's mere "display" of the advertisements, Rosetta Stone alleges that "Google's *advertisers . . . create 'Sponsored Links'* and other advertisements that [use Rosetta Stone's marks]." *Id*. ¶ 60 (emphasis added); *see also id.* ¶¶ 36, 51, 52 (referencing submission of advertisements by third-party advertisers).

Rosetta Stone's allegations fall far short of the necessary showing to exclude Google from the CDA's immunity. *E.g., Beyond Systems, Inc. v. Keynetics, Inc,.* 422 F. Supp. 2d 523, 536-37 (D.Md. 2006) (website's alleged knowing participation in sending large numbers of misleading emails did not affect its immunity under the CDA because the plaintiff did not allege that the website created or altered the emails); *Corbis Corp. v. Amazon.com, Inc.,* 351 F. Supp. 2d 1090, 1117-18 (W.D. Wash. 2004) (granting CDA immunity against claim for tortious interference based on Amazon's publication of copyrighted images on its and third parties' websites despite the plaintiff's allegation that Amazon "shaped the content of what was offered for sale . . . and directly provided the unauthorized images displayed on its IMDb.com platform" because the plaintiff did not allege that Amazon "create[d] or develop[ed]" the images at issue).

In its opposition, Rosetta Stone will presumably stress its allegations that "Google actively solicits and encourages advertisers to use trademarks . . . as keyword[s]," using its "keyword tool." Complaint, ¶ 57. This is insufficient. According to Rosetta Stone's own allegations, the keyword tool does not create the content of the advertisements; it merely gives advertisers the ability to refine the keyword terms they select, thereby triggering where the advertisements will be displayed. *Id.* This is a classic example of protected editorial discretion. *Zeran*, 129 F.3d at 330 ("Thus, lawsuits seeking to hold a service provider liable for its exercise

13

of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred."); *Carafano*, 339 F.3d at 1123 ("[S]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process."); *Universal Communication Systems, Inc.*, 478 F.3d at 422 (the CDA protected the defendant's decisions concerning how to construct and operate its website, including "its inherent decisions about how to treat postings generally"); *Parker*, 242 Fed. Appx. at 838 (affirming dismissal of tort claims against Google arising from its archiving of and providing access to allegedly defamatory Internet postings).

Moreover, even if a particular tool "'facilitates the expression of information,' it generally will be considered 'neutral' so long as users ultimately determine what content to post." *Goddard,* 2009 WL 2365866 at *3 (citations omitted). As the *Goddard* court held, "[l]ike the menus in *Carafano*, Google's Keyword Tool is a neutral tool. It does nothing more than provide options that advertisers may adopt or reject at their discretion." *Id.*

Because the publishing of competitive advertisements in connection with Google's advertising program is the *sine qua non* of Rosetta Stone's Count VIII (Complaint ¶ 132), and because third parties—not Google—create the content of those advertisements, Count VIII must be dismissed under the CDA.

## **CONCLUSION**

Because Rosetta Stone entered a valid and binding contract with Google that contains a mandatory California forum selection clause, this action should be dismissed under Rule 12(b)(3) of the Federal Rules of Civil Procedure. If, however, the Court finds that Rosetta Stone has met the heavy burden of not enforcing its exclusive venue selection agreement and denies Google's Rule 12(b)(3) motion, Google respectfully submits that the Court dismiss the Fourth

Cause of Action because it is deficient as a matter of law and dismiss the Eighth Cause of Action

because of Google's immunity under the Communications Decency Act, 47 U.S.C. §230.

Respectfully Submitted,

GOOGLE INC.
By Counsel

_____/s/_____
Jonathan D. Frieden, Esquire (VSB No. 41452)
Stephen A. Cobb, Esquire (VSB No. 75876)
ODIN, FELDMAN & PITTLEMAN, P.C.
9302 Lee Highway, Suite 1100
Fairfax, Virginia  22031
(703) 218-2100
(703) 218-2160 (facsimile)
jonathan.frieden@ofplaw.com
stephen.cobb@ofplaw.com

Margret M. Caruso, Esquire, *Pro Hac Vice*
QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
(650) 801-5101
(650) 801-5100 (facsimile)
margretcaruso@quinnemanuel.com
*Counsel for Defendant Google Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of August, 2009, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to the following::

> Terence P. Ross, Esquire (VSB No. 26408)
> GIBSON, DUNN & CRUTCHER, LLP
> 1050 Connecticut Avenue, NW
> Suite 300
> Washington, DC 20036
> tross@gibsondunn.com
> *Counsel for Plaintiff Rosetta Stone Ltd.*

> _____ /s/ _____
> Jonathan D. Frieden, Esquire (VSB No. 41452)
> Stephen A. Cobb, Esquire (VSB No. 75876)
> ODIN, FELDMAN & PITTLEMAN, P.C.
> 9302 Lee Highway, Suite 1100
> Fairfax, Virginia 22031
> (703) 218-2100
> (703) 218-2160 (facsimile)
> jonathan.frieden@ofplaw.com
> stephen.cobb@ofplaw.com
> *Counsel for Defendant Google Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| ROSETTA STONE LTD., | ) | |
| 1919 North Lynn Street, | ) | Case No. 1:09-cv-736-GBL/JFA |
| Arlington, Virginia 22209, | ) | |
| | ) | |
| Plaintiff, | ) | Hon. Gerald Bruce Lee |
| | ) | |
| v. | ) | |
| | ) | |
| GOOGLE INC., | ) | |
| 1600 Amphitheatre Parkway | ) | |
| Mountain View, California 94043, | ) | |
| | ) | |
| Defendant. | ) | |

**[PROPOSED] ORDER GRANTING DEFENDANT GOOGLE INC.'S MOTION TO DISMISS UNDER RULE 12(b)(3)**

**[PROPOSED] ORDER**

Upon consideration of the briefing submitted by the parties in this matter, Google Inc.'s

Motion to Dismiss is hereby GRANTED.

DATED: _____, 2009

By _____
    Hon. Gerald Bruce Lee
    UNITED STATES DISTRICT JUDGE

# EXHIBIT E

# Federal Judicial Caseload Statistics
# March 31, 2008

Office of Judges Programs
Statistics Division
Administrative Office of the United States Courts
Thurgood Marshall Federal Judiciary Building
Washington, D.C. 20544
Telephone: (202) 502-1441
E-Mail: SDInformation@ao.uscourts.gov

Suggested citation:

Administrative Office of the United States Courts. *Federal Judicial Caseload Statistics: March 31, 2008.* Washington, D.C.: 2008.

**Table C-5.**
**U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2008**

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **TOTAL** | **179,549** | **9.7** | **41,718** | **5.2** | **105,778** | **8.1** | **22,631** | **14.4** | **9,422** | **128.2** |
| **DC** | **1,856** | **8.9** | **669** | **6.0** | **1,126** | **9.2** | **31** | **20.0** | **30** | **36.0** |
| **1ST** | **4,881** | **9.4** | **2,051** | **6.2** | **1,936** | **9.7** | **718** | **17.5** | **176** | **26.4** |
| ME | 336 | 7.5 | 142 | 5.6 | 168 | 8.7 | 12 | 12.0 | 14 | 16.5 |
| MA | 2,606 | 8.0 | 1,406 | 6.1 | 788 | 8.1 | 319 | 20.5 | 93 | 29.5 |
| NH | 325 | 8.0 | 81 | 2.6 | 93 | 5.7 | 143 | 14.8 | 8 | - |
| RI | 438 | 9.9 | 176 | 6.2 | 187 | 10.0 | 61 | 12.5 | 14 | 31.0 |
| PR | 1,176 | 11.4 | 246 | 7.8 | 700 | 10.5 | 183 | 20.0 | 47 | 31.5 |
| **2ND** | **19,866** | **11.3** | **4,054** | **7.3** | **12,445** | **11.4** | **3,059** | **15.8** | **308** | **29.3** |
| CT | 1,690 | 10.3 | 1,041 | 8.7 | 542 | 14.0 | 64 | 22.5 | 43 | 30.0 |
| NY,N | 1,064 | 13.8 | 210 | 6.6 | 514 | 12.5 | 318 | 17.1 | 22 | 31.0 |
| NY,E | 5,905 | 13.2 | 924 | 7.3 | 3,629 | 14.1 | 1,248 | 15.1 | 104 | 28.0 |
| NY,S | 9,903 | 9.7 | 1,602 | 7.0 | 6,881 | 9.1 | 1,298 | 12.5 | 122 | 28.0 |
| NY,W | 1,068 | 12.4 | 241 | 8.5 | 689 | 12.0 | 126 | 25.0 | 12 | 37.0 |
| VT | 236 | 8.2 | 36 | 3.3 | 190 | 9.5 | 5 | - | 5 | - |
| **3RD** | **17,142** | **7.5** | **3,351** | **4.9** | **10,316** | **6.9** | **3,209** | **14.4** | **266** | **26.7** |
| DE | 678 | 11.8 | 99 | 4.7 | 535 | 11.7 | 19 | 31.3 | 25 | 33.0 |
| NJ | 5,036 | 8.2 | 1,653 | 5.7 | 1,894 | 6.1 | 1,430 | 15.8 | 59 | 34.4 |
| PA,E | 7,661 | 6.0 | 548 | 2.4 | 5,501 | 5.3 | 1,511 | 12.0 | 101 | 18.8 |
| PA,M | 1,415 | 8.9 | 410 | 4.5 | 905 | 8.5 | 60 | 18.4 | 40 | 27.0 |
| PA,W | 1,988 | 7.8 | 530 | 4.1 | 1,391 | 8.9 | 32 | 25.0 | 35 | 35.0 |
| VI | 364 | 19.4 | 111 | 19.4 | 90 | 24.0 | 157 | 11.0 | 6 | - |
| **4TH** | **11,545** | **7.6** | **2,926** | **5.5** | **7,384** | **7.9** | **1,057** | **9.6** | **178** | **19.5** |
| MD | 2,514 | 6.2 | 916 | 6.2 | 1,348 | 6.5 | 207 | 12.6 | 43 | 24.5 |
| NC,E | 844 | 10.3 | 374 | 8.1 | 452 | 10.8 | 8 | - | 10 | 22.0 |
| NC,M | 728 | 9.5 | 263 | 8.7 | 393 | 9.8 | 71 | 12.0 | 1 | - |
| NC,W | 918 | 7.8 | 275 | 9.3 | 534 | 5.7 | 99 | 15.8 | 10 | 18.0 |
| SC | 2,457 | 8.0 | 368 | 2.4 | 1,935 | 8.3 | 111 | 13.9 | 43 | 21.0 |
| VA,E | 2,168 | 5.1 | 375 | 3.9 | 1,246 | 5.5 | 509 | 7.3 | 38 | 10.6 |
| VA,W | 654 | 9.1 | 154 | 7.5 | 460 | 9.4 | 22 | 10.0 | 18 | 14.8 |
| WV,N | 442 | 11.7 | 166 | 10.4 | 257 | 11.9 | 13 | 25.0 | 6 | - |
| WV,S | 820 | 10.9 | 35 | 2.5 | 759 | 10.6 | 17 | 23.5 | 9 | - |

56

## Table C-5. (March 31, 2008—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **5TH** | **29,102** | **12.5** | **4,555** | **6.9** | **14,319** | **8.4** | **3,486** | **13.2** | **6,742** | **128.9** |
| LA,E | 6,818 | 9.9 | 97 | 4.8 | 4,301 | 7.1 | 2,343 | 13.7 | 77 | 17.0 |
| LA,M | 7,081 | 128.8 | 361 | 4.7 | 350 | 10.8 | 31 | 28.0 | 6,339 | 128.0 |
| LA,W | 1,625 | 11.2 | 423 | 7.5 | 1,132 | 12.9 | 29 | 21.5 | 41 | 28.5 |
| MS,N | 920 | 16.5 | 195 | 7.0 | 365 | 10.9 | 332 | 49.7 | 28 | 22.3 |
| MS,S | 2,272 | 10.3 | 1,414 | 9.0 | 779 | 11.0 | 44 | 20.4 | 35 | 23.5 |
| TX,N | 2,481 | 7.6 | 189 | 6.3 | 2,236 | 7.9 | 5 | - | 51 | 23.0 |
| TX,E | 1,671 | 9.7 | 205 | 6.0 | 1,349 | 9.2 | 72 | 14.6 | 45 | 18.4 |
| TX,S | 4,105 | 6.0 | 1,079 | 3.5 | 2,413 | 7.3 | 544 | 10.7 | 69 | 19.7 |
| TX,W | 2,129 | 8.3 | 592 | 6.5 | 1,394 | 8.6 | 86 | 14.5 | 57 | 18.0 |
| **6TH** | **17,376** | **9.4** | **4,171** | **5.3** | **9,081** | **9.6** | **3,866** | **14.4** | **258** | **25.9** |
| KY,E | 1,329 | 9.1 | 169 | 6.2 | 1,135 | 9.6 | 18 | 17.0 | 7 | - |
| KY,W | 1,090 | 9.2 | 296 | 7.6 | 708 | 9.6 | 76 | 18.0 | 10 | 24.0 |
| MI,E | 4,200 | 9.9 | 887 | 4.9 | 1,312 | 6.3 | 1,935 | 15.5 | 66 | 25.8 |
| MI,W | 909 | 8.4 | 99 | 3.1 | 774 | 9.8 | 20 | 18.4 | 16 | 20.0 |
| OH,N | 4,390 | 8.3 | 1,023 | 3.1 | 2,468 | 10.7 | 866 | 10.8 | 33 | 19.8 |
| OH,S | 2,515 | 10.0 | 1,034 | 6.0 | 934 | 10.9 | 513 | 15.9 | 34 | 27.0 |
| TN,E | 981 | 12.7 | 167 | 7.6 | 395 | 9.7 | 388 | 16.7 | 31 | 23.0 |
| TN,M | 1,033 | 9.1 | 158 | 5.0 | 835 | 10.0 | 13 | 19.0 | 27 | 21.0 |
| TN,W | 929 | 11.6 | 338 | 10.7 | 520 | 11.9 | 37 | 29.0 | 34 | 29.0 |
| **7TH** | **12,191** | **8.7** | **3,546** | **5.5** | **6,740** | **8.9** | **1,703** | **12.9** | **202** | **26.0** |
| IL,N | 6,525 | 6.5 | 2,309 | 5.1 | 3,523 | 6.7 | 599 | 12.2 | 94 | 27.5 |
| IL,C | 612 | 9.5 | 219 | 7.0 | 373 | 9.5 | 8 | - | 12 | 30.0 |
| IL,S | 763 | 10.9 | 167 | 7.4 | 547 | 10.4 | 26 | 24.0 | 23 | 24.0 |
| IN,N | 1,098 | 11.0 | 212 | 5.0 | 424 | 9.1 | 449 | 14.9 | 13 | 22.5 |
| IN,S | 1,816 | 9.9 | 450 | 4.3 | 984 | 10.9 | 355 | 12.1 | 27 | 26.5 |
| WI,E | 940 | 8.8 | 144 | 3.3 | 701 | 8.5 | 73 | 15.0 | 22 | 36.0 |
| WI,W | 437 | 4.0 | 45 | 2.0 | 188 | 4.0 | 193 | 6.2 | 11 | 11.0 |
| **8TH** | **10,118** | **10.7** | **3,019** | **5.8** | **5,411** | **10.7** | **1,472** | **21.4** | **216** | **22.9** |
| AR,E | 1,109 | 13.6 | 209 | 10.5 | 850 | 13.1 | 10 | 12.5 | 40 | 20.5 |
| AR,W | 570 | 10.7 | 16 | 2.0 | 535 | 10.8 | 6 | - | 13 | 14.0 |
| IA,N | 412 | 9.1 | 60 | 6.0 | 335 | 9.8 | 2 | - | 15 | 24.0 |
| IA,S | 541 | 11.8 | 138 | 7.8 | 275 | 9.0 | 119 | 17.2 | 9 | - |
| MN | 3,333 | 10.4 | 1,044 | 2.2 | 981 | 8.1 | 1,273 | 23.0 | 35 | 22.0 |
| MO,E | 1,707 | 7.5 | 717 | 6.4 | 942 | 8.7 | 12 | 18.0 | 36 | 22.0 |
| MO,W | 1,425 | 9.5 | 669 | 8.5 | 726 | 9.4 | 7 | - | 23 | 24.0 |
| NE | 589 | 9.7 | 16 | 2.0 | 523 | 9.1 | 26 | 16.7 | 24 | 18.5 |
| ND | 171 | 10.4 | 62 | 7.3 | 100 | 11.6 | 4 | - | 5 | - |
| SD | 261 | 11.8 | 88 | 9.3 | 144 | 10.0 | 13 | 18.0 | 16 | 33.0 |

## Table C-5. (March 31, 2008—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **9TH** | **26,817** | **8.1** | **8,606** | **6.1** | **16,019** | **8.4** | **1,673** | **13.1** | **519** | **25.2** |
| AK | 313 | 10.1 | 105 | 7.3 | 201 | 11.8 | - | - | 7 | - |
| AZ | 1,993 | 10.7 | 707 | 8.0 | 1,221 | 10.3 | 20 | 37.0 | 45 | 31.3 |
| CA,N | 4,128 | 7.4 | 1,027 | 4.2 | 1,979 | 6.6 | 1,065 | 12.6 | 57 | 25.5 |
| CA,E | 1,956 | 10.1 | 705 | 8.0 | 1,187 | 11.9 | 33 | 23.7 | 31 | 27.0 |
| CA,C | 8,548 | 7.8 | 3,175 | 5.6 | 5,106 | 7.0 | 92 | 18.0 | 175 | 22.8 |
| CA,S | 1,911 | 7.0 | 274 | 5.2 | 1,389 | 6.6 | 216 | 9.4 | 32 | 29.4 |
| HI | 635 | 11.2 | 375 | 9.6 | 203 | 13.4 | 39 | 19.0 | 18 | 26.0 |
| ID | 405 | 12.6 | 25 | 5.7 | 348 | 12.9 | 15 | 17.0 | 17 | 27.5 |
| MT | 490 | 10.3 | 188 | 7.6 | 210 | 10.3 | 75 | 15.0 | 17 | 25.0 |
| NV | 1,721 | 10.9 | 665 | 8.5 | 974 | 10.7 | 56 | 13.8 | 26 | 32.0 |
| OR | 1,783 | 10.9 | 587 | 8.8 | 1,139 | 11.9 | 16 | 24.0 | 41 | 20.3 |
| WA,E | 451 | 7.6 | 140 | 4.6 | 277 | 8.0 | 25 | 14.5 | 9 | - |
| WA,W | 2,416 | 7.0 | 598 | 4.2 | 1,760 | 8.1 | 16 | 16.0 | 42 | 18.0 |
| GUAM | 21 | 8.3 | 14 | 8.8 | 4 | - | 3 | - | - | - |
| NMI | 46 | 12.0 | 21 | 9.0 | 21 | 12.0 | 2 | - | 2 | - |
| **10TH** | **7,545** | **8.5** | **1,323** | **5.2** | **4,786** | **8.3** | **1,252** | **12.5** | **184** | **24.0** |
| CO | 2,044 | 7.9 | 102 | 3.5 | 1,801 | 7.3 | 93 | 18.7 | 48 | 27.0 |
| KS | 1,112 | 9.3 | 297 | 7.2 | 686 | 9.2 | 101 | 17.2 | 28 | 24.0 |
| NM | 994 | 10.2 | 178 | 3.3 | 340 | 9.4 | 447 | 11.3 | 29 | 21.5 |
| OK,N | 667 | 10.0 | 72 | 3.0 | 566 | 10.4 | 17 | 16.5 | 12 | 33.0 |
| OK,E | 414 | 9.6 | 307 | 11.5 | 84 | 7.8 | 9 | - | 14 | 14.4 |
| OK,W | 1,073 | 8.0 | 259 | 4.5 | 363 | 7.3 | 429 | 11.0 | 22 | 16.7 |
| UT | 997 | 8.7 | 69 | 2.5 | 867 | 9.6 | 38 | 16.0 | 23 | 29.4 |
| WY | 244 | 9.8 | 39 | 5.0 | 79 | 5.6 | 118 | 10.0 | 8 | - |
| **11TH** | **21,110** | **7.1** | **3,447** | **5.6** | **16,215** | **7.4** | **1,105** | **14.6** | **343** | **20.2** |
| AL,N | 1,959 | 9.6 | 445 | 8.4 | 1,449 | 9.2 | 25 | 16.0 | 40 | 19.0 |
| AL,M | 784 | 9.3 | 226 | 7.5 | 470 | 8.1 | 73 | 17.8 | 15 | 17.5 |
| AL,S | 640 | 7.6 | 97 | 6.0 | 506 | 7.3 | 20 | 16.8 | 17 | 14.8 |
| FL,N | 902 | 8.1 | 218 | 7.0 | 646 | 8.2 | 20 | 8.5 | 18 | 20.0 |
| FL,M | 6,554 | 8.5 | 421 | 6.8 | 5,959 | 8.4 | 83 | 18.5 | 91 | 21.4 |
| FL,S | 6,106 | 5.7 | 1,258 | 4.4 | 4,691 | 5.9 | 66 | 14.5 | 91 | 17.5 |
| GA,N | 2,927 | 7.9 | 587 | 3.4 | 1,523 | 6.4 | 770 | 12.8 | 47 | 27.4 |
| GA,M | 631 | 11.9 | 142 | 7.8 | 472 | 12.5 | 8 | - | 9 | - |
| GA,S | 607 | 11.7 | 53 | 6.2 | 499 | 10.0 | 40 | 19.0 | 15 | 20.0 |

58

NOTE:   MEDIAN TIME INTERVALS NOT COMPUTED WHEN FEWER THAN 10 CASES REPORTED. THIS TABLE EXCLUDES LAND CONDEMNATIONS, PRISONER PETITIONS, DEPORTATION REVIEWS, RECOVERY OF OVERPAYMENTS, AND ENFORCEMENT OF JUDGMENTS. FOR FISCAL YEARS PRIOR TO 2001, THIS TABLE INCLUDED DATA ON RECOVERY OF OVERPAYMENTS AND ENFORCEMENT OF JUDGMENTS.